[No. B182835. Second Dist., Div. Three. June 26, 2006.]

RONALD SANCHEZ, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Diane Marchant for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gerald M. Sato, Deputy City Attorney, for Defendants and Respondents.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Ronald Sanchez (Sanchez), a police officer for the City of Los Angeles Police Department (Department), appeals a judgment denying his petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) wherein he challenged the Department's downgrade of his pay grade position from Police Officer III to police officer II. Defendants and respondents herein are the City of Los Angeles (the City) and William Bratton, the City's Chief of Police (Chief) (collectively referred to as the Department).

■ The threshold issue is whether the punitive action of downgrade of Sanchez's position was barred by the one-year statute of limitations (Gov. Code, § 3304, subd. (d))[1] set forth in the Public Safety Officers Procedural Bill of Rights Act (the Act) (§ 3300 et seq.). With respect to limitations of actions, the Act provides "no punitive action . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation *and notify the public safety officer of its proposed disciplinary action within that year . . . .*" (§ 3304, subd. (d), italics added.)

Within the one-year period following the Department's discovery of the operative facts giving rise to the proposed discipline, the Department solely proposed disciplinary action consisting of a 20-day suspension. With respect to downgrade considerations, the paperwork at that time stated "None." Accordingly, the Department's subsequent decision, *after* the expiration of the one-year period, to pursue a downgrade in addition to the suspension, was untimely. Therefore, Sanchez is entitled to reinstatement to his position as Police Officer III.

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

Sanchez was a Police Officer III assigned to the Harbor Area. The Department acknowledges the date of its discovery of the facts constituting misconduct by Sanchez, for purposes of the instant disciplinary action of a downgrade, was September 8, 1998.

1. *Administrative proceedings.*

    a. *Notice of proposed disciplinary action, issued within one year of discovery, solely proposed a 20-day suspension.*

On August 25, 1999, within one year of discovery, Captain Melton served Sanchez with a notice of proposed disciplinary action. In the notice, Melton indicated he was proposing to the Chief that Sanchez be suspended for 20 working days based on six proposed charges. The first count alleged that on August 5, 6, or 9, 1998, Sanchez had directed another officer to falsify information on Sanchez's daily field actives report. The remaining five counts alleged that on various dates, between August 5 and November 12, 1998, Sanchez conducted personal business while on duty.

The proposed 20-day suspension was the *only* punitive action set forth in the August 25, 1999 notice. With respect to other possible discipline, such as "Demotion/Downgrade Considerations" and "Relief From Duty Considerations," the accompanying paperwork stated "None."

    b. *Chief rejects the proposed 20-day suspension and refers the matter to a Board of Rights.*

On September 8, 1999, exactly one year after the discovery date, then Chief Bernard Parks rejected Captain Melton's proposed discipline, as set forth in the notice of proposed disciplinary action, and issued a personnel complaint against Sanchez on the same six charges, for hearing and decision by a Board of Rights.[2]

---

[2] Under the Los Angeles City Charter, the Board of Rights does not have the authority to prescribe a penalty of a reduction in pay grade. (*Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 162, fn. 2 [125 Cal.Rptr.2d 474].) If the accused police officer is found guilty, the Board of Rights may select from the following penalties: "(1) suspension for a definite period not exceeding 65 working days with total loss of pay, and with or without reprimand; or [¶] (2) demotion in rank, with or without suspension or reprimand or both; or [¶] (3) reprimand without further penalty; or [¶] (4) removal. [¶] . . . [¶] For purposes of this section, demotion in rank shall mean reduction in civil service classification. *The provisions of*

c. *More than one year after discovery, Captain Melton requests that Sanchez be downgraded.*

On October 27, 1999, more than 13 months after the discovery date of September 8, 1998, Captain Melton served Sanchez with a memorandum written by Melton to the commanding officer of the Department's Human Resources Bureau. In the memorandum, Melton requested Sanchez be reduced in pay grade to Police Officer II and that he be transferred from the Harbor Area. In support of the request, Melton cited the six charges in the personnel complaint against Sanchez, pending before a Board of Rights, *as well as* a 31-day suspension Sanchez received in 1993 after he unnecessarily became involved in an altercation, and a 10-day suspension imposed for Sanchez's involvement in an off-duty alcohol-related traffic collision in 1995.

Melton wrote in said memorandum, *"Based on the totality of the circumstances*, it has been determined that Officer Sanchez be immediately reassigned to duties characterized by less responsibility and greater accountability." (Italics added.) Melton also explained, *"This action is taken separate and apart from any discipline that may result from the referenced [P]ersonnel [C]omplaint."* (Italics added.)[3]

d. *Pursuant to Captain Melton's request, the Chief authorizes downgrade of Sanchez's position.*

On December 8, 1999, the Office of the Chief issued a transfer order downgrading Sanchez to police officer II and transferring him out of the Harbor Area. The transfer order is captioned "OFFICE OF THE CHIEF" and at the end of the order is printed "BERNARD C. PARKS [¶] Chief of Police." The signature above Chief Parks's preprinted name is that of David Gascon, who signed the order for Chief Parks.[4]

---

this section shall not apply to reductions in pay grade* or similar personnel actions caused by reassignment, deselection from bonused positions, and the like. Such personnel actions shall be administered under policies adopted by the department." (L.A. City Charter, § 1070(n), italics added.)

Thus, the Chief's referral of the matter to the Board of Rights did not put Sanchez on notice of a possible reduction in pay grade.

[3] Thus, the requested reduction in pay grade was based on Sanchez's *overall* record over the years, while the charges pending before a Board of Rights were confined to the six-count personnel complaint alleging Sanchez falsified records and conducted personal business while on duty on various occasions.

[4] The Department, in the respondent's brief, acknowledges the December 8, 1999 downgrade order "is signed by David Gascon for Chief of Police Bernard Parks." However, the Department offers a makeshift argument that the downgrade order, "being unsigned by Chief Parks, was not evidence of a decision by Chief Parks to order a downgrade." Obviously, the Department seeks to attribute the downgrade order to David Gascon, rather than to Chief Parks, in an attempt to avoid the impact of *Brown v. City of Los Angeles, supra,* 102 Cal.App.4th

e. *On the personnel complaint, the Board of Rights prescribes a 22-day suspension; the Chief imposes that penalty.*

As for the personnel complaint on the six pending charges against Sanchez, the matter proceeded to a Board of Rights which convened and heard testimony on four dates between January 24, 2000 and May 8, 2001. The board unanimously found Sanchez not guilty on the falsification count, not guilty on one count of conducting personal business while on duty, and guilty on the remaining four counts of conducting personal business while on duty. By way of penalty, the board prescribed that Sanchez be suspended for 22 working days without pay.[5]

On May 21, 2001, Chief Parks, in accordance with the decision of the Board of Rights, suspended Sanchez for 22 working days without pay. Sanchez served the suspension.

f. *In the administrative appeal of the downgrade order, the hearing officer recommends Sanchez be reinstated to Police Officer III.*

As for the Chief's December 8, 1999 downgrade order, Sanchez pursued an internal administrative appeal. On September 16, 2003, a hearing on the downgrade in pay was conducted before Captain Sweet.[6] After reviewing the evidence presented at the hearing, Captain Sweet determined the downgrade of Sanchez to Police Officer II should be overturned and that Sanchez be reinstated as a Police Officer III.

Captain Sweet summarized the testimony and set forth his findings and recommendation in a seven-page memorandum to the current Chief (now Chief Bratton), dated September 25, 2003. In recommending reinstatement, Captain Sweet observed, inter alia: "There are several management concerns

---

at page 177, which held due process is violated if the Chief initially authorizes the punitive action and is also the final decision maker on the administrative appeal.

[5] The 22-day suspension prescribed by the Board was only two days more than the 20-day suspension recommended by Captain Melton in the August 25, 1999 notice of proposed disciplinary action.

[6] The reasons for the lengthy delay in the administrative appeal are as follows. At the time Sanchez was downgraded, the Department did not have an administrative appeal procedure in place. Chief Parks implemented an appeal procedure on November 15, 2000, a procedure which came under legal attack for alleged due process infirmities. (*Brown v. City of Los Angeles, supra,* 102 Cal.App.4th at p. 166.) Following the issuance of *Brown,* the Department revised its appeal procedures in a new administrative order dated August 25, 2003. Sanchez's appeal hearing before Captain Sweet then followed on September 16, 2003.

on the downgrading of Sanchez. One is the system of reducing an officer in rank on the same grounds that involve a [P]ersonnel [C]omplaint that has not been adjudicated, this causes problems for the employee and the Department. In this incident, the allegation of falsifying a [daily field activities report] was serious misconduct . . . . But in this case, the officer was found not to have committed this misconduct. Therefore, the main reason for downgrading of Officer Sanchez was no longer an issue."

> g. *The Chief rejects the hearing officer's recommendation and upholds the December 8, 1999 downgrade order.*

October 1, 2003, the Chief issued an order rejecting Captain Sweet's recommendation. The Chief stated in his decision, "Upon a review of the record, I find that there was sufficient cause to support the downgrade . . . ." In his two-page decision, the Chief explained that as a field training officer, Sanchez "was not only required to perform his job right, he was obligated to exemplify the highest standards so that the trainees under his charge would operate to those high standards when they were released from training. Officer Sanchez's actions 'poisoned the well' by teaching his trainees to neglect their duties."

> 2. *Trial court proceedings.*

> a. *Sanchez's petition for writ of mandate.*

On May 18, 2004, Sanchez filed a petition for writ of mandate seeking to set aside the Chief's decision refusing to reinstate Sanchez to Police Officer III.

Sanchez contended, inter alia, the Chief's decision was an abuse of discretion because Sanchez "was not advised that the Department intended to downgrade him until over a year had passed since it discovered the alleged misconduct," in violation of the limitations period set forth in section 3304, subdivision (d).

Sanchez also contended the administrative appeal of the downgrade lacked procedural fairness because the Chief initially authorized the downgrade and also acted as the final decision maker on the administrative appeal, in direct violation of *Brown v. City of Los Angeles, supra,* 102 Cal.App.4th at page 177.

b. *Opposition papers.*

The Department argued it complied with section 3304, subdivision (d), in that on August 25, 1999, within one year of discovery, it served Sanchez with the notice of proposed disciplinary action. The Department asserted it is not limited to the discipline outlined in the initial notice of proposed disciplinary action, and its amendment of discipline, to include a downgrade, relates back to the initial charges and/or discipline.

With respect to Sanchez's claim the Chief's dual role in authorizing the downgrade and acting as the final decision maker on the administrative appeal on the downgrade violated due process, the Department merely argued Sanchez failed to show Chief Bratton's actual bias. The Department's papers were silent as to the impact of *Brown v. City of Los Angeles, supra*, 102 Cal.App.4th 155.

c. *Trial court's ruling.*

After hearing the arguments of counsel and taking the matter under submission, the trial court denied Sanchez's petition. The trial court set forth its reasoning in an extensive minute order. With respect to the one-year limitations period of section 3304, subdivision (d), the trial court ruled in relevant part:

"The reduction in pay grade ordered by the Chief of Police constitutes punitive action within the meaning of section 3304 (d). Neither party contends otherwise. [¶] The chief issue raised by [Sanchez] is whether the [Department] complied with the limitations period provided for in section 3304 (d). . . . [¶] Sanchez contends that the reduction in pay grade against him was not undertaken in compliance with the one year limitation period provided for in section 3304 (d). The [Department] contends that it complied with the statute by issuing the Notice of Proposed Disciplinary Action on August 25, 1999, and that, 'While the department's Notice of Proposed Discipline did not include the downgrade, it didn't have to.' . . . The contentions by both parties are incorrect.

"The intention of the Legislature was obviously to require the public agency to determine the discipline that it would propose to the Chief of Police, not some discipline that it did not intend to recommend. *Section 3304 (g) enumerates the reasons for which the one year limitations period can be extended by the [Department], but a change of mind regarding the recommended punishment is not one of those reasons.*

"Sanchez takes the position that section 3304 (d), 'prohibits the Department from taking punitive action more than a year after it discovered grounds for the action.' . . . However, the statute says no such thing. It requires only that the punishment that the Department will recommend to the Chief of Police be disclosed to the accused officer within the one year period. That requirement was met in this case. On August 25, 1999, within the one year period, Sanchez was notified that the Department would recommend to the Chief that he be suspended but that he not be reduced in grade.

"When the Chief finally made his decision, that was exactly the recommendation that had been presented to him. He rejected it as to the reduction in grade, but the statute does not require the Chief to accept the recommended penalty.

"Sanchez relies upon the fact that at some time between the expiration of the one year period and the time that the Chief decided upon the punishment, Captain Melton changed his recommendation to a reduction in pay grade. *The court agrees that Melton could not properly do so, except under the conditions spelled out in section 3304 (g). But Melton's error was corrected by the Department administratively when Sanchez appealed the question of his reduction in pay grade to Captain Sweet.* The one recommendation that the evidence shows was actually transmitted to the Chief of Police was a recommendation [from Captain Sweet] that Sanchez not be reduced in grade." (Italics added.)

As for Sanchez's claim the Department's administrative appeal procedure violates due process, the trial court ruled: "The Chief of Police was not disqualified to decide whether Sanchez should be reduced in pay grade on the ground that he initially authorized such action and then reviewed his own prior decision. No evidence was produced that the Chief actually authorized a reduction in pay grade as to Sanchez at any time before October 1, 2003. The evidence cited by Sanchez to the contrary is a five page printout of all inter-divisional pay grade changes and transfers, dated December 8, 1999 . . . . It is not signed by the Chief of Police and there is no evidence before the court that the Chief participated in the preparation of, or approved, the printout."

Sanchez filed a timely notice of appeal from the judgment denying his petition for writ of mandate.

## CONTENTIONS

Sanchez contends: the reduction in his pay grade was barred by the one-year statute of limitations set forth in section 3304, subdivision (d); and the administrative process, in which the Chief initially authorized the pay grade reduction and thereafter acted as the final decision maker on the administrative appeal, violates due process.

## DISCUSSION

### 1. *Standard of appellate review.*

The petition for superior court review of the Chief's final decision upholding the pay downgrade to Police Officer II was brought pursuant to Code of Civil Procedure section 1094.5.

"The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).)[7]

To the extent a mandamus proceeding involves the interpretation of a statute—here, section 3304, subdivision (d)—the question is one of law for our de novo review. (*Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 348 [94 Cal.Rptr.2d 287].) Likewise, Sanchez's challenge to the procedural fairness of the administrative hearing, based on the Chief's dual role in authorizing the downgrade in the first instance and then acting as the final decision-maker on the administrative appeal, is reviewed "de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law. [Citations.]" (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482 [22 Cal.Rptr.3d 772]; accord *Brown v. City of Los Angeles, supra,* 102 Cal.App.4th at p. 168.)

### 2. *Exhaustion of administrative remedies.*

The Department contends Sanchez failed to exhaust his administrative remedies in that during the administrative proceedings, Sanchez failed to argue either that his downgrade to Police Officer II was time-barred pursuant to section 3304, subdivision (d), or that the Chief's role as final decision maker

---

[7] Sanchez's contention the pay grade reduction was time-barred put in issue whether the Chief proceeded "without, or in excess of jurisdiction." (Code Civ. Proc., § 1094.5, subd. (b).) Sanchez's contention the Chief's dual role in authorizing the pay grade reduction and thereafter in acting as the final decisionmaker on the administrative appeal put in issue the procedural fairness of the proceeding.

on the administrative appeal violated his right to due process. Therefore, according to the Department, Sanchez cannot invoke the jurisdiction of the courts to consider these legal arguments which he did not raise or preserve in the administrative proceedings. The Department's argument lacks merit.

"Futility is an exception to the exhaustion of administrative remedies doctrine. [Citation.]" (*Grier v. Kizer* (1990) 219 Cal.App.3d 422, 430–431 [268 Cal.Rptr. 244], disapproved on other grounds in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 577 [59 Cal.Rptr.2d 186, 927 P.2d 296]; accord *Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 620 [113 Cal.Rptr.2d 309].) Here, the Department consistently has maintained it timely notified Sanchez of its proposed disciplinary action, in compliance with section 3304, subdivision (d), and that the Chief's participation as final decision maker comports with due process. The Department adheres to these positions on appeal. In view of the Department's unyielding position on these legal issues, an administrative challenge by Sanchez on these grounds certainly would have been futile. (*Grier v. Kizer, supra*, at p. 431.)

We now turn to the merits of the appeal.

3. *The Department failed to notify Sanchez of the proposed disciplinary action of downgrade within one year of discovery of the facts giving rise to the proposed discipline, as mandated by section 3304; therefore, the downgrade was time-barred and Sanchez is entitled to reinstatement as Police Officer III.*

a. *The pertinent statute.*

Section 3304 provides in relevant part at subdivision (d): "*Except as provided in this subdivision and subdivision (g), no punitive action, . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery* by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, *it shall* complete its investigation and *notify the public safety officer of its proposed disciplinary action within that year,* except in any of the following circumstances: . . ." (Italics added.)[8]

---

[8] Section 3304, subdivision (d) then sets forth the following eight exceptions to the one-year rule: "(1) If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period. [¶] (2) If the public safety officer waives the one-year time period in writing, the time period shall be tolled for the

Section 3304, at subdivision (g), states: "Notwithstanding the one-year time period specified in subdivision (d), an investigation may be reopened against a public safety officer if both of the following circumstances exist: [¶] (1) Significant new evidence has been discovered that is likely to affect the outcome of the investigation. [¶] (2) One of the following conditions exist: [¶] (A) The evidence could not reasonably have been discovered in the normal course of investigation without resorting to extraordinary measures by the agency. [¶] (B) The evidence resulted from the public safety officer's predisciplinary response or procedure."

The Department does not invoke any of the numerous exceptions to the one-year rule as set forth in subdivision (d) or subdivision (g) of section 3304. Thus, the issue before us is whether the Department duly notified Sanchez of its proposed disciplinary action within one year of its discovery of the facts underlying the proposed discipline, in accordance with section 3304.

> b. *The August 25, 1999 notice of proposed disciplinary action, which solely proposed a 20-day suspension and eschewed a downgrade, was insufficient to notify Sanchez of the proposed downgrade.*

> (1) *Sulier v. State Personnel Bd. (2004) 125 Cal.App.4th 21 [22 Cal.Rptr.3d 615], cited by the Department, is inapposite.*

The Department contends the August 25, 1999 notice of proposed disciplinary action, less than one year after the discovery date of September 8, 1998, was sufficient to make Sanchez aware that he needed to take steps if he wished to defend against possible discipline. The Department asserts said notification was only a notice of *proposed* disciplinary action from Captain Melton and not a commitment by the Department to Sanchez that he would never receive a punitive action in excess of the 20-day suspension indicated in the notice.

---

period of time specified in the written waiver. [¶] (3) If the investigation is a multijurisdictional investigation that requires a reasonable extension for coordination of the involved agencies. [¶] (4) If the investigation involves more than one employee and requires a reasonable extension. [¶] (5) If the investigation involves an employee who is incapacitated or otherwise unavailable. [¶] (6) If the investigation involves a matter in civil litigation where the public safety officer is named as a party defendant, the one-year time period shall be tolled while that civil action is pending. [¶] (7) If the investigation involves a matter in criminal litigation where the complainant is a criminal defendant, the one-year time period shall be tolled during the period of that defendant's criminal investigation and prosecution. [¶] (8) If the investigation involves an allegation of workers' compensation fraud on the part of the public safety officer."

In support, the Department cites *Sulier v. State Personnel Bd., supra,* 125 Cal.App.4th 21, which observed: "Section 3304(d) requires the public employer to notify the officer of the 'proposed disciplinary action.' To 'propose' something means 'to form or put forward a plan or intention.' (Merriam-Webster's Collegiate Dict. (10th ed. 2000) p. 933.) Just because the discipline is proposed does not mean it will be carried out." (*Id.* at p. 29.)

In *Sulier,* the issue presented was whether section 3304, subdivision (d), requires the public agency also to serve a formal notice of adverse action (§ 19574) within one year of discovery of a correctional officer's misconduct, or is it sufficient if the agency notifies the officer of its proposed disciplinary action within the one-year deadline. (*Sulier v. State Personnel Bd., supra,* 125 Cal.App.4th at p. 24.) In *Sulier,* just under a year after discovery, the agency notified the employee it proposed to impose a one-step demotion; one month later, the agency served the employee with a formal notice of the adverse action of demotion. (*Id.* at pp. 24–25.) Thus, *Sulier* involved a proposed demotion followed by an actual demotion. *Sulier* held the statutory scheme only requires notification to the public safety officer of the proposed disciplinary action within the one-year deadline—however, the formal notice of adverse action is not subject to the one-year limitation period set forth in section 3304, subdivision (d). (*Sulier,* at p. 29.)

*Sulier* does not stand for the proposition a timely notice of *some* punitive action makes all subsequent punitive action actually imposed timely. Further, such an interpretation would be at odds with the language of the statute, which requires the Department to "*notify the public safety officer of its proposed disciplinary action* within that year . . . ." (§ 3304, subd. (d), italics added.) This provision requires the Department to notify the officer of the specific disciplinary action that is being proposed, not merely to advise the officer that *some* disciplinary action is being contemplated.[9]

■ Our conclusion section 3304 requires the notice of disciplinary action to specify the disciplinary action which is being proposed is reinforced by the seminal *Skelly* decision, which states "due process does mandate that [a permanent civil service] employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include *notice of the proposed action,* the reasons therefor, a copy of the charges and materials upon which the action is based, and the

[9] We observe the nature of the proposed disciplinary action will have some bearing on how the officer responds. Presumably, a proposed penalty of termination will be resisted more vigorously than a proposed reprimand.

right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774], italics added.)

> (2) *The pay grade reduction first proposed by Captain Melton on October 27, 1999 was untimely and therefore is barred.*

The Department acknowledges the date of its "discovery" of the underlying facts constituting misconduct by Sanchez was September 8, 1998.

Irrespective of whether the Department would elect to pursue a 20-day suspension based on the six proposed charges first set forth in the August 25, 1999 notice of proposed disciplinary action, or whether the Department also would elect to pursue a reduction in Sanchez's pay grade, the one-year statutory period for notifying Sanchez of its proposed disciplinary action began to run no later than September 8, 1998. (§ 3304, subd. (d).) Unlike the proposed 20-day suspension, which was based solely on the six charges being proposed by Captain Melton, the proposed reduction in pay grade was based on the six current charges as well as on the 1993 and 1995 incidents which were the subject of prior suspensions. Nonetheless, by September 8, 1998, the Department admittedly was aware of *all* these circumstances, triggering the running of the one-year period for giving notice of the proposed discipline based on all the known facts. (§ 3304, subd. (d).)

As indicated, in the August 25, 1999 notice of proposed disciplinary action, which was the only notice of proposed discipline served within one year of discovery, Captain Melton solely proposed a 20-day suspension, and the accompanying paperwork expressly eschewed any "downgrade considerations." This was merely a proposal and not binding on the Chief.

■ Thereafter, on September 8, 1999, exactly one year after the discovery date, the Chief rejected the proposed 20-day suspension and issued a personnel complaint against Sanchez for hearing and decision by a Board of Rights. Even assuming the personnel complaint could be construed as a notice of proposed disciplinary action, said notification did not put Sanchez on notice of a possible downgrade because, as explained in footnote 2, *ante*, under section 1070(n) of the Los Angeles City Charter, the Board of Rights did not have the authority to prescribe a penalty of a reduction in pay grade.[10]

---

[10] The Department seems to contend that because a Board of Rights has the power to select from a broad range of penalties, up to and including termination, an order requiring a police officer to face a Board of Rights is sufficient to satisfy the notice requirement of section 3304, subdivision (d) and to advise the officer he or she may suffer any penalty that lies within the jurisdiction of a Board of Rights. Given the circumstances of this case, that issue is not before us. Here, as indicated, the City Charter precludes a Board of Rights from imposing a pay grade

The first mention of a possible downgrade was on October 27, 1999, more than 13 months after the discovery date, at which time Captain Melton served Sanchez with a memorandum written by Melton to the commanding officer of the Department's Human Resources Bureau. In the memorandum, Melton requested that Sanchez be reduced in pay grade to Police Officer II and that he be transferred from the Harbor Area.

With respect to the October 27, 1999 notice, the trial court noted, "*Section 3304 (g) enumerates the reasons for which the one year limitations period can be extended by the [Department], but a change of mind regarding the recommended punishment is not one of those reasons.* [¶] . . . [¶] Sanchez relies upon the fact that at some time between the expiration of the one year period and the time that the Chief decided upon the punishment, Captain Melton changed his recommendation to a reduction in pay grade. *The court agrees that Melton could not properly do so, except under the conditions spelled out in section 3304 (g). But Melton's error was corrected by the Department administratively when Sanchez appealed the question of his reduction in pay grade to Captain Sweet.*" (Italics added.)

We agree with the trial court insofar as it found Captain Melton improperly proposed harsher discipline after the expiration of the one-year period for giving notice of proposed disciplinary action. However, we reject the trial court's conclusion that Captain Melton's error was somehow cured by the fact the Department afforded Sanchez an administrative appeal on his downgrade. Because the reduction in pay grade was not proposed by Captain Melton until after the one-year period expired, said punitive action was barred by section 3304, subdivision (d).

█ In a final attempt to uphold the reduction in pay grade, the Department contends the failure of the August 25, 1999 notice of proposed disciplinary action to include a downgrade recommendation was harmless because Sanchez suffered no prejudice to his ability to defend himself and there is no indication Sanchez would have prepared his defense any differently had the notice included a downgrade recommendation. The argument does not meet the issue. The effect of the Department's failure to notify Sanchez of a proposed downgrade within the one-year limitation period is to bar such punitive action. (§ 3304, subd. (d).)

reduction. (See fn. 2, *ante.*) Therefore, the Chief's rejection of Captain Melton's proposed 20-day suspension and his order that Sanchez face a Board of Rights did not put Sanchez on notice of a possible reduction in pay grade.

Accordingly, Sanchez is entitled to reinstatement to Police Officer III as a matter of law.[11,12]

## DISPOSITION

The judgment denying Sanchez's petition for writ of mandate is reversed. Because the pay grade reduction is time-barred, the matter is remanded to the trial court with directions to order the Department to reinstate Sanchez to the position of Police Officer III. Sanchez shall recover costs on appeal.

Croskey, J., concurred.

**KITCHING, J.,** Concurring.—I concur in the judgment with the exception of footnote 11 of the opinion.

---

[11] In view of the language of section 3304, which prohibits the Department from taking punitive action "for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery" and which requires the Department to "notify the public safety officer of its proposed disciplinary action within that year" (§ 3304, subd. (d)), it is debatable whether the Department had the authority to utilize the prior suspensions, dating back to 1993 and 1995, as part of its justification for downgrading Sanchez in 1999. It is self evident that by 1999, the facts underlying those earlier suspensions had been known to the Department for years.

The parties have not briefed this threshold issue of whether section 3304 permits the penalty in a current disciplinary action to be enhanced by facts known to the Department for more than one year, but it is unnecessary to address it here. Assuming arguendo section 3304 did not preclude the Department from utilizing the 1993 and 1995 suspensions as part of the justification for the 1999 downgrade, and that it was not until September 8, 1998 that the Department discovered *all* the facts relating to the entire course of conduct underlying the proposed downgrade, the fact remains that the Department failed to notify Sanchez of the proposed downgrade until October 27, 1999, more than 13 months after said discovery date. Therefore, under the circumstances of this case, the downgrade is time-barred under *either* interpretation of section 3304.

[12] Because the reduction in pay grade is time-barred, it is unnecessary to address whether the Chief's dual role in authorizing the downgrade in the first instance, and thereafter acting as the final decision maker on the administrative appeal, violated due process. (See *Los Angeles Police Protective League v. City of Los Angeles* (2002) 102 Cal.App.4th 85, 93 [124 Cal.Rptr.2d 911]; cf. *Brown v. City of Los Angeles, supra,* 102 Cal.App.4th at p. 177.)