[No. B184689. Second Dist., Div. Eight. Sept. 12, 2007.]

KELLY CHRISMAN, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Gary S. Casselman for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Kim Rodgers Westhoff, Deputy City Attorney, for Defendants and Respondents.

OPINION

**RUBIN, J.**—Kelly Chrisman appeals from the trial court's denial of his petition for a writ of mandate ordering the Los Angeles Police Department to reinstate him as a police officer. We reverse and remand for further proceedings for the limited purpose of the department's reconsideration of the proper punishment for appellant's misconduct.

## FACTS AND PROCEDURAL HISTORY

Appellant Kelly Chrisman was a Los Angeles police officer until the Los Angeles Police Department fired him in October 2003 for misusing his department computer. His troubles began when he started dating a woman named Cynthia Truhan-Garvey. When appellant ended their relationship, Truhan-Garvey told the department on March 29, 2000, that appellant had beaten her. At 3:00 o'clock in the morning the day after Truhan-Garvey leveled her accusations, the department arrested appellant and turned him over to the sheriff. He was held for eight hours and then released.

The sheriff's department investigated Truhan-Garvey's accusations. And for its part, the police department began its own internal administrative review of her charges. During the department's investigation, Truhan-Garvey additionally accused appellant of selling confidential information about celebrities that he had retrieved from law enforcement computers.

At the end of its assault investigation, the sheriff's department concluded Truhan-Garvey's injuries were self-inflicted, and the district attorney's office declined to prosecute appellant because Truhan-Garvey was not credible. The district attorney noted her injuries contradicted her description of how appellant supposedly attacked her. Moreover, she had been convicted once before for making false accusations of being a victim of domestic violence (Pen. Code, § 148.9).[1]

In August 2000, appellant filed an administrative claim against the City of Los Angeles alleging false arrest and violation of his civil rights, which the city rejected. In February 2001, the district attorney's office told the department that appellant's purported misuse of department computers was not a felony unless he sold the information he had acquired. On March 28, 2001, the department served a 52-count administrative complaint on appellant. Thirty-three of the 52 counts involved Truhan-Garvey's allegations of domestic violence and related misconduct, such as appellant's entering her apartment without her consent to take her dog. The next day on March 29, 2001,

---

[1] All further undesignated section references are to the Penal Code.

appellant filed a civil rights lawsuit for false arrest in federal district court against the city and department personnel who had investigated the administrative charges.

In November 2001, the department convened a board of rights to hear its administrative charges against appellant. The board of rights was suspended, however, pending the resolution of appellant's federal lawsuit against the department. Eventually, the federal lawsuit settled, with the city paying appellant almost $250,000.

In May 2003, the Los Angeles Superior Court found appellant factually innocent of Truhan-Garvey's accusations of domestic violence. Appellant sent the superior court's findings to the department. In August 2003, the department withdrew all 33 of the administrative charges of domestic violence it had filed against appellant.[2] The department added, however, three counts for misuse of department computers, alleging appellant "while on duty, accessed the Department computer system (NECS) for non-duty related activities." New count 42 alleged appellant misused his mobile digital terminal computer (MDT) from May 31, 1993, to April 21, 1999. New count 43 alleged he misused the department's NECS system (network communications system queries) from December 6, 1994, to September 30, 1998. And new count 45 alleged he misused his MDT between April 28, 1999, and March 20, 2000. The gist of the charges was that appellant searched the computers about people for which he had no legitimate work reason, including celebrities, Truhan-Garvey and her acquaintances, and himself.

Appellant objected to the length of time the new charges of computer misuse covered, arguing it made them vague. In response, the department narrowed the dates for count 42 to 13 months between March 29, 1998, and April 21, 1999 (the earlier date being exactly three years minus a day before the department filed its administrative complaint), and for count 43 to six months between March 29, 1998, and September 30, 1998.

At the end of the board of rights hearing, the board found appellant guilty of the three charges of misusing department computers. (The board also found appellant guilty on 12 other counts in the administrative complaint, but neither appellant nor respondents argue they are relevant to this appeal.) The board recommended appellant's termination for his computer misuse. The department accepted the recommendation, and fired appellant in October 2003.

---

[2] Other charges remained, but they are not pertinent to this appeal. They included appellant's taking Truhan-Garvey's dog, entering her apartment without her permission, conducting personal business at work, disobeying a commanding officer's orders, and lying to investigators.

In January 2004, appellant filed a petition for writ of administrative mandate.[3] His petition claimed the department had violated a number of his rights in firing him. According to him, he properly used the department's computers in his duties as a police officer. He also argued the three computer counts were unfairly imprecise about the dates of his supposed misuse, and alleged conduct outside the statute of limitations. Finally, he asserted the board of rights was prejudiced against him because of conflicts of interest. The court rejected appellant's claims and denied the petition. This appeal followed.

## STANDARD OF REVIEW

The trial court applies its independent judgment to the department's administrative decision, but with a strong presumption the department acted properly. (Code Civ. Proc., § 1094.5, subd. (c); *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 812, 817 [85 Cal.Rptr.2d 696, 977 P.2d 693].) We review the trial court's factual findings for substantial evidence. (*Fukuda*, at p. 824.) We independently review the court's legal findings. (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1057 [1 Cal.Rptr.2d 195].)

## DISCUSSION

A. *Two-year Statute of Limitations*

i. *The Proper Statute.* The department terminated appellant solely on three counts of misusing department computers. Appellant contends the counts were fatally flawed because they alleged misconduct more than two years old when the department filed its administrative complaint in March 2001. He argues a two-year statute of limitations applied because his misuse of the computers was at most an administrative violation, not a crime. Under the city charter in effect at the time, he notes, the department could not punish him for administrative misconduct any older than two years. The charter provided: "(b) For an administrative charge based substantially or entirely on conduct punishable as a misdemeanor, the limitations period shall be three years from occurrence. [¶] (c) For all other misconduct [neither a felony nor misdemeanor] the limitations period shall be two years from occurrence." (Former L.A. City Charter, art. XIX, Police Dept., § 202, subd. (4)(b), (c) [eff. Apr. 8, 1997] <http://www.lacity.org/lacity102.htm>;

---

[3] His petition named respondents City of Los Angeles, Chief of Police William Bratton, Captain J. Rupert, Captain R. Marbrey, and Art Mattox.

<http://www.amlegal.com/nxt/gateway.dll?f=templates&fn=default.htm&vid= amlegal:la_charter> [as of Sept. 12, 2007]; see now <http://www.lacity.org/ lacity102.htm>.) Appellant concludes the trial court therefore erred when it applied a three-year statute of limitations to find the counts were timely. We agree.[4]

Respondents contend a three-year statute of limitations for criminal misuse of department computers applied because appellant violated section 502, subdivision (c)(7) when he made his non-work-related computer inquiries. That statute provides that a person commits a public offense if he "Knowingly and without permission *accesses* or causes to be accessed any computer, computer system, or computer network." (§ 502, subd. (c)(7), italics added.)

Respondents' contention fails because the provision they cite does not apply to appellant's misuse of department computers. Section 502 defines "access" in terms redolent of "hacking" or breaking into a computer. It states: " 'Access' means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." (§ 502, subd. (b)(1).) As the court in *People v. Gentry* (1991) 234 Cal.App.3d 131 [285 Cal.Rptr. 591] explained: "One of the legislative purposes of Penal Code section 502 was 'to deter and punish . . . browsers and hackers—outsiders who break into a computer system to obtain or alter the information contained there. . . .' [Citation.]" (*Gentry*, at p. 141, fn. 8.)

Underscoring that "accessing" a computer's "logical, arithmetical, or memory function" is different from the ordinary, everyday use of a computer to which people are accustomed when they speak of "using" a computer, another subdivision criminalizes "us[ing] or caus[ing] to be used computer services" without permission. (§ 502, subd. (c)(3).)[5] Principles of statutory interpretation obligate us to give different meanings to the words "use" and "access" in order to avoid rendering either word redundant. (*Bernard v. Foley* (2006) 39 Cal.4th 794, 810–811 [47 Cal.Rptr.3d 248, 139 P.3d 1196]; *People v. Contreras* (1997) 55 Cal.App.4th 760, 764 [64 Cal.Rptr.2d 233].)

---

[4] Respondents contend the court found appellant waived his two-year statute of limitations defense. Not so. Appellant repeatedly argued to the board of rights that a two-year statute applied. When it mentioned waiver, the court had in mind a statute of limitations different from the two-year statute. We discuss that second statute of limitations in part E., *post.*

[5] Respondents do not rely on section 502, subdivision (c)(3) to argue appellant's misuse of the department's computer was criminal, presumably because a statutory exemption at subdivision (h)(2) applied if one were to accept respondents' contention that his misuse was outside the scope of his employment. We discuss subdivision (h)(2) below.

One cannot reasonably describe appellant's improper computer inquiries about celebrities, friends, and others as hacking. As a commentator who surveyed computer security laws throughout the country, including California's section 502, observed: "Every state has some sort of prohibition against accessing a computer, computer system, or network without authorization. . . . [T]he states generally employ a two-tiered approach to outlawing unauthorized access (simple hacking) and unauthorized access that results in the commission of some further criminal activity such as copying or destroying data (aggravated hacking, or cracking). . . . The proscriptions of simple hacking are substantively consistent. These statutes almost unanimously outlaw the act of gaining unauthorized access to a computer or computer system and/or of attempting to gain such access. However, there is little consistency in the way the offense is characterized. Some states define simple hacking as 'computer trespass,' [fn. omitted] others describe it as 'unauthorized access' [such as Penal Code section 502] or 'unauthorized use,' [fn. omitted] and still others characterize it as 'computer tampering.' [fn. omitted.]" (Cronin & Weikers, Data Security and Privacy Law: Combating Cyberthreats (2002) § 15:19.)

Appellant's computer queries seeking information that the department's computer system was designed to provide to officers was misconduct if he had no legitimate purpose for that information, but it was not hacking the computer's "logical, arithmetical, or memory function resources," as appellant was entitled to access those resources. *People v. Lawton* (1996) 48 Cal.App.4th Supp. 11 [56 Cal.Rptr.2d 521] cited by respondents illustrates the difference. In that case, the court affirmed a library patron's conviction under section 502, subdivision (c)(7) for "unauthorized access to a computer system." (*Lawton*, at p. Supp. 12.) There, the patron used the library's public terminal which the library intended patrons to use to search only the library's electronic card catalog. The patron used the terminal, however, to "bypass security and penetrate levels of software not open to the public," and his offense lay in such bypassing and penetration. (*Lawton, supra*, at p. Supp. 12.) Appellant's misuse of the department's computers was different. He used them to get information to which he was entitled when performing his job, but retrieved it for non-work-related reasons.

But even if, as respondents urge, section 502, subdivision (c)(7) applied to appellant's misconduct, respondents ignore subdivisions (h) and (i) of that statute. Appellant referred to subdivision (h)'s provisions in his closing argument to the board of rights, but the parties' appellate briefs did not fully address its implications. Accordingly, we directed the parties to file supplemental letter briefs on those provisions' effect on respondents' assertion that appellant's misuse of department computers was criminal.

Broadly speaking, subdivision (h) has two subparts that under certain conditions prohibit criminally punishing an employee who misuses an employer's computer. The first subpart applies to an employee's computer misuse within the scope of his employment. It states: "Subdivision (c) [the punishment provision on which respondents rely] does not apply to punish any acts which are committed by a person within the scope of his or her lawful employment. For purposes of this section, a person acts within the scope of his or her employment when he or she performs acts which are reasonably necessary to the performance of his or her work assignment." (§ 502, subd. (h)(1).)

■ It is undisputed that appellant was on duty when he misused department computers. Respondents argue appellant was not, however, acting within the scope of his employment because he had no legitimate job-related reason for his computer inquiries. But respondents define "scope of employment" too narrowly. They suggest it covers only legitimate job-related conduct, rendering acts that violated department rules outside the scope of employment. Generally speaking, however, showing that an employee violated an employer's rules does not determine whether the employee acted within the scope of employment. For example, in *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202 [285 Cal.Rptr. 99, 814 P.2d 1341], the Supreme Court held that a police officer in uniform and driving a marked police car was acting within the scope of his employment when he pulled over a drunken driver but instead of arresting her, took her home and raped her. The Supreme Court explained, "Tortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment. [Citations.] So may acts that do not benefit the employer [citation], or are willful or malicious in nature [citations]." (*Id.* at p. 209.) And in *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962 [227 Cal.Rptr. 106, 719 P.2d 676], the Supreme Court came to a similar conclusion in a case where a youngster was hurt riding alongside his uncle who was driving his employer's tractor while working a field. The Supreme Court found the uncle was within the scope of employment despite letting his nephew ride in violation of company rules because he was working for his employer while operating the tractor. (*Id.* at pp. 967–970.)

Finally, in *Mahru v. Superior Court* (1987) 191 Cal.App.3d 545 [237 Cal.Rptr. 298], the defendant in a contract dispute retaliated out of "spite" against a customer of his employer by altering a computer's software to prevent the customer from using the employer's computer. (*Id.* at p. 549.) At the time, section 502 differed slightly from the current version. The earlier statute stated, " 'Any person who maliciously accesses, alters, deletes, damages, destroys or disrupts the operation of any computer system, computer network, computer program, or data is guilty of a public offense.' " (*Mahru, supra,* at p. 548.) In rejecting criminal charges against the defendant, the

court stated, "Section 502, subdivision (c) cannot be properly construed to make it a public offense for an employee, with his employer's approval, to operate the employer's computer in the course of the employer's business in a way that inconveniences or annoys or inflicts expense on another person." (*Id.* at p. 549.)

Together these cases show that an employer's disapproval of an employee's conduct does not cast the conduct outside the scope of employment. If the employer's disapproval were the measure, then virtually any misstep, mistake, or misconduct by an employee involving an employer's computer would, by respondents' reasoning, be criminal. For example, if an employer prohibited employees from logging onto the Internet to check their personal e-mail, respondents' definition of scope of employment would make reading one's e-mail on company time a crime even where the employee read the e-mail on a computer regularly assigned to that employee. Surely, that was not the Legislature's intent in enacting section 502, subdivision (c)(7).

In any case, even if appellant's computer inquiries were outside the scope of his employment, section 502, subdivision (h)(2) exempts those inquiries from criminal sanction. It provides, "[S]ubdivision (c)[(3)] does not apply to penalize any acts committed by a person acting outside of his or her lawful employment, provided that the employee's activities do not cause an injury, [defined elsewhere in the statute], to the employer or another, or provided that the value of supplies or computer services, [also defined elsewhere in the statute], which are used does not exceed an accumulated total of one hundred dollars ($100)."

■ Respondents do not rely upon section 502, subdivision (c)(3) to argue appellant's misuse of department computers was criminal. Nevertheless, we discuss it here because that subdivision, which criminalizes unapproved "use" of a computer, applies more closely to appellant's misuse of department computers than does subdivision (c)(7) upon which respondents rely covering unauthorized "access." The exemption at subdivision (h)(2) covering computer misuse outside the course of employment requires that the employee not "injure" the employer's computers. Section 502 defines "injury" as "any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access to legitimate users." (§ 502, subd. (b)(8).) Appellant inflicted no such damage to the department's computers. Thus, even if his computer inquiries were outside his employment, subdivision (h)(2) renders them noncriminal.[6]

---

[6] Section 502, subdivision (h)(2) also applies when the employee's misuse costs the employer less than $100 of computer services or supplies. Respondents offered no evidence of the cost to the department from appellant's computer inquiries, but a salient feature of computer networks is that the marginal cost in resources such as electricity and computer time

ii. *The Proper Punishment.* Under the Los Angeles City Charter, the department could not punish appellant for misuse of department computers that predated the department's administrative complaint by more than two years. Nevertheless, a substantial part of the department's evidence against appellant involved misconduct falling outside the two-year limit. We look at the three counts in turn.

1. Count 42. The department supported this count with exhibits showing appellant's computer inquiries on multiple dates. Some of those exhibits involved dates within the two-year limit. For example, one exhibit compiled appellant's license plate and MDT inquiries from January 2000 to March 2000. Another exhibit was a printout of appellant's MDT inquiries for one day in July 1999. And finally, two other exhibits covered MDT inquiries and accompanying field reports for one day in January 1999. But half of the exhibits that the department submitted covered conduct more than two years old (although they did fall within the three-year limit that the department and board of rights believed applied). For example, exhibit 40 covered appellant's MDT inquires for July 6, 1998. Exhibit 41 was a printout of appellant's MDT inquiries for the next day, July 7, 1998. Exhibit 44 documented appellant's MDT inquiries for one day in August 1998, and exhibit 48 documented them for a day in November.

2. Count 43. The department supported this count with 13 pages of appellant's NECS inquiries from 1994 to 1998, all outside the two-year statute of limitations. Hence, no evidence supporting that count was within the two-year limit.

3. Count 45. The department offered two exhibits to substantiate this count. Of the three counts alleging computer misuse, this was the only one to allege misconduct entirely within the two-year statute of limitations. One exhibit was a compilation of license plate and MDT inquiries regarding, with a few exceptions, appellant's family and acquaintances, Truhan-Garvey, and himself. The second was an MDT printout for one day in 2000, during which appellant inquired about a model who operated a Web site that described her as a "goddess."

4. Appellant's Termination. The department terminated appellant for his misuse of department computers. The board stated: "Counts 42, 43, and 45 individually and/or collectively would have resulted in this Board recommending your removal from office. [¶] Therefore, it shall be the unanimous recommendation of this Board to the Chief of Police that you be removed from office. [¶] That concludes this Board of Rights."

---

is probably nil in responding to the sort of computer inquiries appellant made. It is hard to fathom that the department's computers expended more than $100 to supply appellant with the computer bits and bytes that answered his queries.

██ We review appellant's punishment for abuse of discretion. (*Flippin v. Los Angeles City Bd. of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 279 [55 Cal.Rptr.3d 458].) Because nothing in the record shows the department tried to separate misconduct less than two years old from appellant's older misconduct that the department could not punish, the department fired appellant under a misapprehension of the law. The board stated it deemed each count individually sufficient for discharge, but only count 45 remained unpared by the two-year cutoff; half the misconduct under count 42, on the other hand, fell away as untimely, and count 43 was cut down entirely. Thus, we do not truly know what the board would have recommended if it had known appellant's punishable misconduct was substantially less than it had supposed, and the board's "and/or" formulation of the sufficiency of each count does not give us any certainty. Therefore, we remand this matter to the department for its reconsideration to determine appellant's appropriate punishment for those acts of computer misuse that he committed in the two years before the department filed its administrative complaint.

B. *Board's Consideration of Computer Misuse Older Than Two Years*

The board heard evidence of appellant's misuse of department computers from more than two (and even three) years before the department filed its complaint. For example, it received evidence of his computer inquiries from mid-1997 to 2000 about Truhan-Garvey's license plate, the license plate of her boyfriend after appellant, the license plate of appellant's girlfriend after Truhan-Garvey, and of appellant's own plate. The board also received evidence of appellant's improper computer inquiries about celebrities from 1994 to 1998.

Appellant contends the board erred by admitting evidence of misuse that was more than two years old because it violated the department's special order 1.2. He misreads the order (which is actually entitled a "Notice"). It does not prohibit the board from receiving time-barred evidence; it only prohibits the department from using the evidence to punish appellant. It states: "Any penalty for allegations which are beyond the California State statute of limitations, or reference to such out-of-statute penalty in any document or other record, shall not be considered for purposes of promotions, . . . progressive discipline, patterns of conduct, or other Department actions adverse to the interests of the sworn employee."

The board's manual prohibited punishing appellant for out-of-statute conduct. (Board of Rights Manual, § 260.90.) "The Board's findings on penalty [for in-statute charges] shall not be influenced by the facts of the out-of-statute count(s)." (*Ibid.*) The board followed that rule by its own lights in discharging

appellant for computer misuse within what the board (incorrectly) thought was a three-year statute of limitations. The board confirmed it did not consider appellant's out-of-statute computer misuse in meting out his punishment. The board's error was not in considering out-of-statute evidence for an otherwise proper purpose (e.g., plan, absence of mistake), but in applying the wrong statute of limitations.

## C. Adequate Notice of Computer Counts

As originally pleaded by the department, the computer misuse counts covered the years from 1993 to 2000. In support of its initial charges, the department gave appellant a seven-foot stack of MDT printouts, showing every one of his MDT transmission in those years. The department waited until the hearing, however, to sift through the printouts to select a one-inch stack on which to examine appellant.

Appellant contends due process entitled him to receive earlier in the proceedings greater precision by the department about the dates on which it intended to focus. He argues the department's initial approach impeded his ability to prepare his defense. He does not cite or discuss any authority establishing the level of detail required. He asserts, however, that notice as a hearing unfolds is inadequate.

The court found the charges were not vague because appellant received notice of his conduct that was at issue. He received before the hearing a 19-page letter from the department describing the charges against him, supported by 51 pages of department investigators' notes and almost 600 pages of addenda. Moreover, the department narrowed the computer counts to cover only the three years before it filed its complaint. Because appellant does not identify any prejudice from failing to receive earlier and greater detail about the charges than what he received, his claim to a violation of due process fails.

## D. Appellant Waived His Conflict of Interest Claim

Appellant contends his federal civil rights lawsuit against the city and several members of the department created two conflicts of interest for respondents: the first involving the department's internal investigation of him, and the second involving the impartiality of the board of rights. As to the

investigation, he notes his civil rights lawsuit included as defendants Detectives Stabler and Cox and Lieutenant Lizarraga, who investigated Truhan-Garvey's allegations against him.[7] According to him, because of his lawsuit, their investigation was slipshod. The investigation's principal shortcoming in his view was its failure to consider Truhan-Garvey's history of false accusations against boyfriends, her history of self-inflicted injuries, and her conviction for filing a false police report of domestic violence. If the investigators had considered her background, he argues, the department would never have credited her accusations of domestic violence in choosing to file 33 domestic violence counts against him in the administrative complaint.

Appellant's contention about the investigation fails for two reasons. First, the authorities he cites establish that an administrative proceeding's decision makers must be unbiased, but he cites no authority that an investigator's purported bias must scuttle an investigation. (*Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 483–484 [22 Cal.Rptr.3d 772]; *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810, 812–813 [7 Cal.Rptr.3d 896].)

Second, the trial court correctly found appellant had not raised with the board the investigators' purported conflicts of interest. Appellant points to several times in the record where he claims he raised their conflicts, but his citations do not support him. He says he raised the conflict in his "Skelly response" before the department served the administrative complaint.[8] That response alleges general departmental bias against him, but does not expressly discuss the investigators' alleged conflict of interest from his yet-to-be-filed federal lawsuit. He also says he raised the conflict of interest in a February 2003 letter to the police chief during the board of rights proceeding. But that letter does not mention the investigators, focusing instead on his belief that Truhan-Garvey and the city attorney's office were conspiring against him. Finally, he says he raised the conflict of interest in a letter to the police chief appealing the board's recommendation that the department terminate him. But he offers no argument how such a letter sent after the board of rights has completed its proceedings can be timely.

---

[7] The timing of appellant's civil rights lawsuit and the alleged conflict of interest is confusing. He did not sue the detectives and lieutenant until one day after the department filed its administrative complaint in March 2001. Thus, it is unclear how the lawsuit created a conflict of interest *during* the department's internal investigation. We do note, however, that appellant filed a government tort claim against the city in August 2000 as a precursor to his lawsuit, arguably alerting the department to the risk of eventually being sued. And although Detectives Stabler and Cox withdrew from the investigation the same month appellant filed his tort claim and were replaced by a detective whom appellant did not sue, the lieutenant supervising the investigation did not change. On that somewhat tenuous connection, we will accept, for the sake of argument only, appellant's claim that the investigation was prejudiced against him.

[8] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

The second conflict of interest that appellant alleges involved the city attorney's office. He argues the office impermissibly advised both the board, which was supposed to be a neutral adjudicator of the claims against him, and the department advocate who prosecuted the case. Appellant's assertion is, generally speaking, arguably well taken because a city attorney should not advise both the prosecutor and adjudicator. (*Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1585–1586 [5 Cal.Rptr.2d 196].) The city contends it cured the conflict by having two different attorneys from the city attorney's office advise the board and advocate, which the law recognizes as one possible way to resolve the conflict. We need not reach that issue, however, because appellant did not preserve the issue for appeal. His Skelly response before the board of rights convened did not mention the city attorney's arguable conflict of interest. His February 2003 letter to the police chief does not mention a conflict of interest within the city attorney's office, but instead focuses on an alleged conspiracy by the city attorney and Truhan-Garvey against him. And his letter to the chief of police after the board concluded its proceedings was untimely because it came too late for the board and city attorney to cure whatever conflict that may have existed.

E. *Appellant Waived His Government Code Section 3304 Statute of Limitations Argument*

Appellant contends respondents violated the one-year statute of limitations under Government Code section 3304, subdivision (d). That statute required the department to notify him of the punishment it proposed imposing within one year of learning about his misconduct. He notes that the department's administrative complaint filed one day before the one-year deadline was entitled "Complaint and relief from duty, suspension, or demotion." The complaint did not mention termination. But, as the court noted (see fn. 4, *ante*), appellant did not raise this issue in his board of rights hearing, therefore failing to preserve it for appeal.

Appellant contends he did not waive the statute of limitations because *Sanchez v. City of Los Angeles* (2006) 140 Cal.App.4th 1069 [45 Cal.Rptr.3d 188], was published after his board of rights hearing ended. He correctly notes *Sanchez* stated a police department must tell an officer of the actual discipline it may eventually impose within one year of learning about the officer's misconduct. (*Id.* at p. 1081.) Appellant's reliance on the timing of *Sanchez*'s publication is unavailing, however, because the one-year statute of limitations defense dated from the enactment of Government Code section 3304 in 1997, predating *Sanchez* by nine years and his board of rights by four. (Stats. 1997, ch. 148, § 1.) The statute was therefore available for him to raise before *Sanchez*, and his failure to do so waived it.

## DISPOSITION

The matter is reversed and remanded to the Los Angeles Police Department for reconsideration of its punishment of appellant based on his two years of misuse of the department computers from March 29, 1999, to March 28, 2001. Appellant to recover costs on appeal.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied October 12, 2007, and appellant's petition for review by the Supreme Court was denied December 19, 2007, S156883.