[No. S149455. Apr. 17, 2008.]

JON MAYS, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Diane Marchant for Plaintiff and Appellant.

Silver, Hadden, Silver, Wexler & Levine, Stephen H. Silver, Enrique A. Hernandez, Susan Silver and Elizabeth Silver Tourgeman for Los Angeles Protective League and California Association of Highway Patrolmen as Amici Curiae on behalf of Plaintiff and Appellant.

Clishman & Sortor, William H. Sortor and Lawrence J. Friedman for Peace Officers Research Association of California Legal Defense Fund as Amicus Curiae on behalf of Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gerald Masahiro Sato, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**GEORGE, C. J.**—This case concerns the Public Safety Officers Procedural Bill of Rights Act. (Gov. Code, § 3300 et seq.)[1] Section 3304, subdivision (d) (section 3304(d)), provides a limitations period specifying that "no punitive action" may be imposed upon any public safety officer for alleged misconduct unless the public agency investigating the allegations "complete[s] its investigation and notif[ies] the public safety officer of its proposed disciplinary action" within one year of discovering the alleged misconduct. We granted review to address the question of whether the notice required by section 3304(d) is satisfied by informing an accused officer, within the statutory one-year period, that the agency proposes that certain misconduct charges "be adjudicated by a Board of Rights."

In the Los Angeles Police Department (LAPD), a "Board of Rights" is an administrative tribunal charged under the Los Angeles City Charter (L.A. Charter) with the adjudication of charges of police officer misconduct. (L.A. Charter, § 1070(a).) At the conclusion of a Board of Rights hearing, the board is required to make a finding of "guilty" or "not guilty" on each charge and to prescribe, for any positive finding of misconduct, a penalty from a specified range of disciplinary options including reprimand, suspension, demotion, and dismissal. (*Id.,* § 1070(n).) The Los Angeles Chief of Police (Chief of Police) has the discretion to accept or reduce, but not to increase, any punishment recommended by the Board of Rights. (*Id.,* § 1070(p).)

The Court of Appeal held that a notice informing plaintiff that the LAPD was proposing to the Chief of Police that several counts of misconduct "be adjudicated by a Board of Rights" failed to comply with section 3304(d) because the notice did not specifically identify any contemplated punishment or discipline. In reaching this conclusion, the court relied upon language from *Sanchez v. City of Los Angeles* (2006) 140 Cal.App.4th 1069 [45 Cal.Rptr.3d 188] (*Sanchez*). The Court of Appeal also concluded that a second notice subsequently provided to plaintiff, although sufficiently specific, was served upon him too late—slightly more than one year after discovery of the alleged misconduct. Accordingly, the appellate court directed the trial court to issue a writ of mandate setting aside the discipline (a written reprimand) that ultimately was imposed upon plaintiff for the misconduct at issue.

■ We conclude that the Court of Appeal erred in interpreting section 3304(d) to require notice of specific proposed punishment. To the contrary, the notice contemplated by the language and context of section 3304(d) is

---

[1] Our opinion refers to this statute by its commonly used name, the Peace Officers Bill of Rights Act or POBRA. All further statutory references are to the Government Code unless otherwise indicated.

simply notice that the public agency, having completed its investigation into the alleged misconduct within the statutory period, has decided that it may take disciplinary action against the officer for specified misconduct. Although the agency is not *precluded* from proposing specific discipline at that time, it is not required by section 3304(d) to do so. A notice informing an officer of a proposed Board of Rights adjudication not only informs him or her that disciplinary action may be taken as the result of the investigation into the alleged misconduct—the notice required by the statute—but also identifies the procedural mechanism by which the officer's punishment, if any, will be determined. The judgment of the Court of Appeal is therefore reversed.

## I.

We provide only a very brief summary of the facts of this case sufficient to enable us to address the question upon which review was granted. On July 23, 2002, plaintiff, Sergeant Jon Mays, received a written form entitled "Notice of Proposed Disciplinary Action" from his employer, the LAPD. The notice and related materials advised plaintiff that he faced disciplinary charges for, among other things, failing to (1) adequately secure confidential department materials or (2) promptly report their loss.[2] This form listed four "penalties" that could be proposed to the Chief of Police for misconduct involving sworn tenured employees: (1) suspension for a specified period of days; (2) demotion to a specified rank; (3) suspension for a specified period of days plus demotion to a specified rank; or (4) "[t]hat the matter be adjudicated by a Board of Rights."[3] Only the last option was checked on the

---

[2] These charges arose out of allegations that plaintiff (1) lost internal affairs documents when the documents were taken from his automobile during a burglary that occurred when the vehicle was parked in the driveway of his residence and (2) failed promptly to report the loss. Defendants concede that this alleged misconduct, which is the subject of the reprimand at issue, was discovered by the LAPD on July 26, 2001.

[3] *Pursuant to the LAPD manual, adjudication by a Board of Rights is itself characterized as a "penalty"* that a commanding officer may recommend when a disciplinary complaint against a sworn employee is sustained. (See 3 LAPD 2007 1st Quarter Manual, §§ 820.30, 825.10.) Generally, LAPD officers cannot be "suspended, demoted in rank, suspended and demoted in rank, removed, or otherwise separated from the service of the department . . . except for good and sufficient cause shown upon a finding of guilty of the specific charge or charges . . . after a full, fair, and impartial hearing" before a Board of Rights. (L.A. Charter, § 1070(a).) Exceptions to this rule allow the Chief of Police to (1) temporarily relieve an officer from duty pending a hearing before and decision by a Board of Rights, (2) suspend an officer for 22 working days (or less) with loss of pay and with or without reprimand, (3) demote an officer with or without suspension or reprimand, or both, or (4) demote the member in rank, with or without temporary relief from duty or cancellation of such relief from duty. (*Id.,* § 1070(b).) Even in circumstances falling within the exceptions, however, the actions of the Chief of Police are subject to predisciplinary procedures otherwise required by law and to the officer's right to file an application for a hearing before a Board of Rights which, if invoked,

form provided to plaintiff.[4] Accordingly, the notice informed plaintiff that the LAPD was proposing to the Chief of Police that the disciplinary charges alleged against plaintiff go forward and be adjudicated by a Board of Rights.

Section 1070(n) of the L.A. Charter sets forth the possible punishment that may be prescribed by a Board of Rights upon a positive finding of officer misconduct. These options range from reprimand to removal. (See L.A. Charter, § 1070(n); Board of Rights Manual (12th ed. 2005) § 272.30.) But, following a series of procedural complications that are not relevant to the issue before us, two of the charges of alleged misconduct contained in the July 23, 2002 notice—that is (1) the failure to secure confidential materials adequately and (2) the failure to report their loss promptly—ultimately were not submitted to a Board of Rights hearing, but instead were sustained by the Chief of Police in the official letter of reprimand at issue in this case.[5]

Plaintiff challenged the reprimand by initiating an administrative appeal and filing a petition for writ of mandate in the superior court. In the writ

---

automatically stays any suspension and/or demotion. (*Id.,* § 1070(b).) If the Chief of Police decides that a suspension of more than 22 working days or termination is appropriate, the case automatically proceeds to a Board of Rights hearing.

A Board of Rights hearing is considered a de novo hearing. (L.A. Charter, § 1070(f).) Comprised of two officers with the rank of captain or above and one civilian, a Board of Rights has the authority to examine witnesses under oath and compel the attendance of witnesses and the production of documents. (*Id.,* § 1070(h), (j).) In a Board of Rights proceeding, the LAPD has the burden of proving each charge by a preponderance of the evidence, and the accused officer has the right to appear in person (and by counsel or a representative, at the officer's expense) and defend against the charges, and may produce witnesses and cross-examine witnesses. (*Id.,* § 1070(*l*), (m).)

[4] The notice further informed plaintiff of his right to representation prior to engaging in discussion of the matter, of the opportunity to respond either orally or in writing by a certain date, and that his response would be reviewed and forwarded to the Chief of Police for evaluation prior to adjudication of the matter.

[5] These complications include the following. On August 12, 2002, several weeks after providing him with the initial July 23 notice, the LAPD served plaintiff with a second document entitled "Complaint and Relief from Duty, Suspension or Demotion." That document referred to both of the instances of alleged misconduct set forth in the July 23 notice (including the failure to secure confidential materials adequately or promptly report their loss), and also to an additional charge relating to false statements allegedly made by plaintiff during an official investigation. It further informed plaintiff that, on the basis of this alleged misconduct, he was being demoted in rank effective August 17, 2002, and was not being relieved of duty "pending a hearing before and decision by [a Board of Rights]" on the charges.

Only the charge relating to alleged false statements proceeded to a Board of Rights, however. The remaining charges (including the charges relating to the failure to secure confidential materials adequately or promptly report their loss) were sustained in the reprimand that is the subject of the present appeal. The Chief of Police signed the letter of reprimand on February 4, 2003, but apparently it was not formally served on plaintiff while the false statement charge was awaiting a Board of Rights hearing. On May 12, 2003, the Board of Rights found plaintiff "not guilty" of that charge. Shortly thereafter, on May 22, 2003, the LAPD served plaintiff with the challenged reprimand.

proceeding, plaintiff asserted, among other claims, that the notice he received on July 23, 2002, did not satisfy section 3304(d), because no specific penalty was mentioned. The trial court denied the petition, finding that plaintiff was adequately notified within one year of the "proposed disciplinary action," as required by section 3304(d) when he received the July 23, 2002 notice.

The Court of Appeal reversed, concluding in relevant part that the notice received by plaintiff on July 23, 2002, although given within one year of discovery of the alleged misconduct, was insufficient to satisfy section 3304(d), because it informed him only of the action proposed to the Chief of Police that the misconduct be adjudicated by a Board of Rights, and "did not specify any 'proposed disciplinary action' as explicitly required by section [3304(d)]." We granted review to address the Court of Appeal's holding that section 3304(d) requires that an accused officer be notified of specific proposed discipline.

## II.

This case calls upon us to interpret a provision of the Peace Officers Bill of Rights Act. Initially enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1202), POBRA "sets forth a list of basic rights and protections which must be afforded all peace officers [citation] by the public entities which employ them. It is a catalogue of the minimum rights [citation] the Legislature deems necessary to secure stable employer-employee relations [citation]." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874]; see also *White v. County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191] [noting that POBRA "is concerned primarily with affording individual police officers certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them"].) The various procedural protections provided by POBRA "balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment." (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 909 [4 Cal.Rptr.3d 325] (*Jackson*), citing *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 569 [273 Cal.Rptr. 584, 797 P.2d 608].)

Section 3304 provides a number of procedural rights for public safety officers who may be accused of misconduct in the course of their employment. Subdivision (d), providing for a limitations period, states in pertinent part: "Except [as otherwise provided,] no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery . . . of an act, omission, or other misconduct. This one-year limitation

period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998. In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed disciplinary action within that year, except [as specifically provided]." (§ 3304(d).)[6]

At issue in this appeal is the meaning of the language in section 3304(d) requiring a public agency to "notify the public safety officer of its proposed disciplinary action." Defendants contend that the quoted language requires only that notice of the misconduct charges be provided. Plaintiff and the Court of Appeal, however, view section 3304(d) as mandating notice of the specific punishment or discipline that is contemplated for the charged misconduct. As we shall explain, we believe the Court of Appeal's interpretation is not consistent with the language or purpose of the statute.

■ In construing statutes, "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.] If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.]" (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].)

■ Viewing the terms of section 3304(d) as a whole, it appears clear that the fundamental purpose of this provision is to place a one-year limitation on *investigations* of officer misconduct. The one-year period runs from the time the misconduct is discovered. Once the public agency decides that discipline may be warranted ("that discipline may be taken" (*ibid.*)), it must so inform the public safety officer (must "notify the public safety officer of its proposed disciplinary action" (*ibid.*)). In this context, it seems most reasonable to interpret the language "proposed disciplinary action" as referring to the agency's determination that "discipline may be taken." (*Ibid.*) Not only completion of the investigation, but also the requisite notification to the

---

[6] In addition to satisfying the requirements of section 3304(d), a public entity must accord constitutional procedural due process before depriving an officer of any significant property interest in his or her employment. (See *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774]; *Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 577 [257 Cal.Rptr. 427].)

officer, must be accomplished within a year of discovery of the misconduct. This interpretation is consistent with the apparent purpose of the subdivision, which is to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline.

A contrary conclusion—that section 3304(d) requires notification of the specific discipline contemplated by the public agency—prematurely would impose a requirement that is unreasonable in view of the timing of the notice. Section 3304(d) refers to an agency decision that "discipline *may* be taken." (Italics added.) The use of the conditional word "may" demonstrates the preliminary nature of the proceedings at the time the notice is required under subdivision (d). It would be anomalous to require the public agency to reach a conclusion regarding potential discipline prior to any predisciplinary proceedings or response on the part of the officer. (See *Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 29 [22 Cal.Rptr.3d 615] (*Sulier*) ["the notice contemplated by section 3304(d) is given at a time when the disciplinary authority has not necessarily committed itself to disciplining the employee . . ."].) Such a requirement also could have the practical effect of always leading the public agency to propose the maximum punishment in order to ensure it retained the full range of options in the subsequent disciplinary proceedings.

Another subdivision of section 3304—subdivision (f)—strongly supports the foregoing interpretation of section 3304(d). Subdivision (f) provides: "If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety officer in writing of its decision to impose discipline, including the date that the discipline will be imposed, within 30 days of its decision, except if the public safety officer is unavailable for discipline." (§ 3304, subd. (f).) Thus, it appears that, ordinarily, a predisciplinary response and/or hearing will occur subsequent to the investigation but prior to the agency's conclusion regarding the specific discipline to be imposed. Once the agency follows its relevant procedural mechanism and decides the level of specific discipline it intends to impose, it *then* has 30 days to so notify the officer. (See *Sulier, supra,* 125 Cal.App.4th at pp. 29–30 [a formal notice of adverse action containing a statement of the nature of such action is required when the public agency decides to impose discipline and serves a formal notice pursuant to § 3304, subd. (f)].) When the two subdivisions are read together, it is evident that section 3304(d) limits the duration of the investigation and provides, through its notice requirement that discipline *may* be imposed, a *starting* point for predisciplinary responses or procedures, whereas subdivision (f) is directed at providing the officer with written notice of the

discipline that the agency—after considering the officer's predisciplinary response—has *decided* to impose.

■    Another subdivision of section 3304 also merits consideration. Subdivision (b) provides: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period . . . without providing the public safety officer with an opportunity for administrative appeal." (§ 3304, subd. (b).) Section 3304 itself, however, does not provide a mechanism for administrative appeal; rather, public agencies employ a number of locally created mechanisms, including those established by collective bargaining agreements, for that purpose. There is no indication in the statute that the local mechanism cannot provide for a determination of the precise discipline at a hearing occurring subsequent to the notification envisioned by section 3304(d).

■    We reiterate that section 3304(d) functions as a limitations period. (See *Moore v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 381 [67 Cal.Rptr.3d 218]; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1075 [55 Cal.Rptr.3d 14]; *Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 988, fn. 7 [50 Cal.Rptr.3d 822]; *Jackson, supra*, 111 Cal.App.4th at p. 909.) Limitations statutes ordinarily establish the period in which an action must be *initiated* (see, e.g., Code Civ. Proc., §§ 335–340.6; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755–756 [76 Cal.Rptr.2d 749, 958 P.2d 1062]; see also *Jackson, supra*, 111 Cal.App.4th at p. 909 [applying ordinary principles governing limitations statutes to § 3304(d)]), but the outcome of the claim or charges generally remains to be adjudicated pursuant to separate statutes governing the specified subsequent procedure. It would be inconsistent with the general function of limitations statutes to treat the limitations provision contained in section 3304(d) as requiring the public agency to reach a firm conclusion with respect to the discipline or punishment actually intended to be imposed at a point ordinarily viewed as the *commencement* of an action.

Nor is there any indication in section 3304(d)'s legislative history that the Legislature intended to require that public agencies propose a specific punishment at the stage when an investigation has been completed but disciplinary proceedings have yet to commence. Indeed, that history reveals no discussion or debate concerning the meaning of section 3304(d)'s phrase "notify the public safety officer of its proposed disciplinary action." Rather,

the history confirms that section 3304(d) was intended to function primarily as a limitation upon *investigations* of misconduct. The express purpose of the bill that encompasses what is now section 3304(d) was "to enact specific time limits and exceptions for investigating alleged acts or omissions which *may* lead to punitive actions, as specified." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1436 (1997–1998 Reg. Sess.) as amended June 17, 1997, pp. 3–4, italics added.) Relevant committee reports express concern about the length of disciplinary investigations and focus upon the need to conclude those investigations in a timely fashion. (See, e.g., Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1436 (1997–1998 Reg. Sess.) June 10, 1997, p. 5 [" 'it is unfair to our peace officer[s] not to investigate and bring charges or dismiss the action within a reasonable time,' " and " '[o]ne year is the agreed-upon time by both labor and management' "].) There is no documented discussion of the specific content of the notice to be provided to the officer once the investigation is completed and discipline is being contemplated. Accordingly, in enacting section 3304(d), it is clear that the Legislature was focused upon preventing a perceived lack of fairness caused by a drawn-out investigatory process—and *not* with requiring that officers receive notice of specific intended discipline at that early stage of the process.

Had the Legislature intended section 3304(d) to require public agencies to propose precise disciplinary consequences or punishment for alleged misconduct, we believe that it would have made this intention clear in the language of the provision, or at least that such an intent would appear in the legislative reports concerning the provision. And yet we find no such indication in either source. In light of the circumstance that section 3304(d) is concerned primarily with setting a one-year deadline for the completion of the public agency's investigation of allegations of officer misconduct, it is more reasonable to conclude that the notice it contemplates is intended only to inform the officer that the agency has found the allegations to be sufficiently serious that they may subject the officer to discipline.

In the present case, plaintiff received notice of the misconduct charges and that the LAPD was proposing to the Chief of Police an adjudication of the charges by a Board of Rights. Notice of charges and of a proposed Board of Rights adjudication informs the officer that the public agency is pursuing disciplinary action. Under the L.A. Charter, a Board of Rights must indicate a penalty from a specified range of disciplinary options (dismissal, demotion, suspension, or written reprimand) for any officer it finds "guilty" of misconduct; the recommended penalty then is imposed or reduced by the Chief of Police. (L.A. Charter, § 1070(n), (p).) Indeed, notice of proposed adjudication by a Board of Rights not only fulfills the statutory requirement of section 3304(d) by notifying the officer that "discipline may be taken" for the alleged

misconduct, but also informs him or her of the intended procedural mechanism under which it is proposed that any potential punishment be determined.

In construing section 3304(d) to require substantially more detail concerning contemplated discipline than is required by statute, the Court of Appeal focused upon language in *Sanchez, supra,* 140 Cal.App.4th 1069, stating that section 3304(d) requires the public agency "to notify the officer of the specific disciplinary action that is being proposed, not merely to advise the officer that *some* disciplinary action is being contemplated." (*Sanchez, supra,* at p. 1081.) In *Sanchez,* the police department recommended a 20-day suspension within section 3304(d)'s one-year period following the department's discovery of the operative facts giving rise to the disciplinary action. With respect to " 'Demotion/Downgrade Considerations,' " the report at that time stated " 'None.' " (140 Cal.App.4th at p. 1072.) Subsequent to the expiration of the one-year period, however, the department decided to pursue a downgrade in addition to a suspension.

The appellate court in *Sanchez* held that the notice of proposed disciplinary action, which specifically proposed a 20-day suspension and *rejected* a downgrade, was insufficient to notify the officer that he faced a possible downgrade—and thus further held that the resulting punitive action was untimely under section 3304(d). (*Sanchez, supra,* 140 Cal.App.4th at pp. 1080–1083.) Although the court appeared to believe that section 3304(d) required notice of "the specific disciplinary action that is being proposed" (*Sanchez, supra,* at p. 1081), the import of the case is that the agency actively misled the officer by later pursuing a downgrade that had been affirmatively eschewed in the section 3304(d) notice. Nonetheless, to the extent *Sanchez v. City of Los Angeles, supra,* 140 Cal.App.4th 1069, purports to interpret section 3304(d) to require notice of specific discipline rather than notice that disciplinary action may be taken, it is disapproved.

### III.

We conclude that the notice contemplated by section 3304(d) is notice that the public agency, having completed its investigation into the alleged misconduct within the statutory period, has decided that it may take disciplinary action against the officer for specified misconduct. A notice proposing that alleged misconduct be adjudicated by a Board of Rights constitutes sufficient notice of proposed disciplinary action under section 3304(d).

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.