[No. B201511. Second Dist., Div. Three. Dec. 23, 2008.]

JERRY LUCIO, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Diane Marchant for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gerald M. Sato, Deputy City Attorney, for Defendants and Respondents.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Jerry Lucio (Lucio), a former Los Angeles Police Department (LAPD or Department) officer, appeals a judgment denying his petition for writ of administrative mandate. (Code Civ. Proc.,

§ 1094.5.) In the petition, which named defendants and respondents City of Los Angeles (the City) and William Bratton, Chief of Police (Chief Bratton) (collectively, the City), Lucio sought to overturn an administrative decision terminating his employment as an LAPD officer.

One year and 13 days after discovering Lucio's misconduct, the Department filed a personnel complaint with the Los Angeles Police Commission. The essential issue presented is whether certain aspects of the City's disciplinary action against Lucio, namely, counts one, two and three, were barred by the one-year limitations period of Los Angeles City Charter (Charter) section 1070(c).

We conclude the City satisfied the one-year limitations provisions of Charter section 1070(c) because the matter was tolled for well in excess of 13 days, while the Department conducted a months-long internal criminal investigation into Lucio's conduct. (Charter, § 1070(c)(1).)

We further conclude that although count one (converting official on-duty contact into social relationship with Jenna K.) and count three (conducting personal business while on duty), unlike count two (inappropriately threatening Jenna K.), did not allege criminal wrongdoing by Lucio, the criminal investigation related to the entire relationship between Lucio and Jenna K. and included the same conduct that was in issue in the administrative disciplinary proceedings. Therefore, the tolling provision of Charter section 1070(c)(1) applies with equal force to counts one and three.

Therefore, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Events leading up to Lucio's discharge.*

The charges underlying Lucio's discharge stem from his relationships with Jenna K., a woman he met in the course of responding to her attempted suicide, and Debra H., a girlfriend and mother of Lucio's three-year-old son.

On June 1, 2004, Lucio and his partner responded to an attempted suicide call. The subject of the call, Jenna K., was taken by paramedics to a Kaiser hospital, where she was interviewed by Lucio.

In August 2004, Lucio contacted Jenna K. while off duty. He went to her residence. He had just broken up with his girlfriend. In September 2004, Lucio and Jenna K. began an intimate relationship.

On March 10, 2005, Jenna K. called Sergeant Blake at Internal Affairs, complaining that Lucio had threatened her.[1] Jenna K. said she was afraid Lucio would kill her and leave the country. Sergeant Donatoni, an investigator for the criminal section of Internal Affairs, conducted a further interview of Jenna K. on April 15, 2005.

On June 14, 2005, Lucio got into an argument with Debra H. concerning their son. Lucio told Debra H. he would go to court to try to get custody because she was an unfit mother. Lucio knew that losing her son would kill her and he said, "I don't need a bullet to kill you." Lucio took the boy from his mother's house to a hotel and later called, telling Debra H. he was 15 minutes away from the Mexican border.

On June 15, 2005, Debra H. called the West Los Angeles Police Station and spoke to a sergeant. Lucio then received a call from his sergeant, directing him to return the boy.

Debra H. then was interviewed about her claim that Lucio had threatened to kill her. Debra H. said she did not really think Lucio would kill her but she was afraid for the safety of their child.

On August 23, 2005, about five and a half months after Jenna K. first called Internal Affairs, it was determined that there was no prima facie criminal case to be presented to prosecutors.

2. *Administrative proceedings.*

On March 22, 2006, slightly more than one year after the March 10, 2005 date of discovery, Lucio was personally served with a "complaint and relief from duty, suspension or demotion." The personnel complaint advised Lucio he was being temporarily relieved of duty on March 23, 2006, pending a hearing and decision by a Board of Rights (Board) on the charges relating to his relationship with Jenna K.

On May 30, 2006, Lucio was personally served with another personnel complaint, advising Lucio he was additionally charged with threatening Debra H.

A Board convened on July 25, 2006, to hear the charges.

Lucio's attorney, Jodi Gonda, moved to strike all the charges related to Jenna K. on the ground they were barred by the one-year limitations

---

[1] March 10, 2005, is the date the Department discovered said misconduct.

provision of Charter section 1070(c)(1).[2] It was undisputed Jenna K.'s allegations were reported to the Department on March 10, 2005. However, the complaint was not served on Lucio until March 22, 2006, and was not filed at the Police Commission until March 23, 2006.

Gonda argued the Department was barred from invoking the tolling provision of Charter section 1070(c)(1) because the matter was never presented to the district attorney's office for possible criminal prosecution. Rather, the log contains an entry that there was "lack of criminal prima facie to present" to a prosecutor.

The Department, in turn, took the position that the internal criminal investigation did not end until it was determined there was not enough to file the case as a criminal threat. Therefore, the Department urged the Board to find the matter was tolled until August 23, 2005.

After consulting with the city attorney's office, the Board found the matter was tolled during the internal criminal investigation pursuant to Charter section 1070(c), and therefore the personnel complaint was timely.

The Board proceeded to find Lucio guilty on four of the six charges against him, namely, counts one, two, three, and six.[3] On July 27, 2006, the Board issued a decision recommending to Chief Bratton that Lucio be removed from service.

On August 25, 2006, Chief Bratton adopted the recommended penalty.

### 3. *Superior court proceedings.*

On September 27, 2006, Lucio filed a verified petition for writ of administrative mandate (Code Civ. Proc., § 1094.5), seeking to set aside the decision terminating his employment and an order reinstating him to his position.

---

[2] Charter section 1070(c)(1) provides: "Limitations Periods. No member shall be removed, suspended, demoted in rank, or suspended and demoted in rank for any conduct that was discovered by an uninvolved supervisor of the department more than one year prior to the filing of the complaint against the member, except in any of the following circumstances: [¶] (1) If the act, omission, or allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period." (Boldface omitted.)

[3] Count one charged Lucio with "while on duty, inappropriately converted an official on-duty contact [with Jenna K.] into a social relationship." Count two, as amended, charged that between February 1 and February 28 of 2005, Lucio, while off duty, made "improper remarks" to Jenna K. Count three charged that between June 1, 2004, and February 15, 2005, Lucio, on numerous occasions while on duty conducted personal business. Count six, as amended, charged that between June 14, 2005, and June 15, 2005, while off duty, Lucio made "improper remarks" to Debra H.

Lucio argued in his papers that counts one, two and three, relating to Jenna K., were barred by Charter section 1070(c). Lucio further contended all the charges were barred by the limitations provision of Government Code section 3304, subdivision (d).

On July 18, 2007, the matter came on for hearing. The trial court denied the petition for writ of mandate and set forth its ruling in a minute order which provides in pertinent part:

"The sole contention raised by petitioner is that his termination was imposed after the time limits set forth in section 1070(c) of the Los Angeles City Charter and in section 3304(d) of the Government Code.

"The City Charter prohibits the removal, suspension or demotion in rank of a police officer for any conduct that was discovered by an uninvolved supervisor of the LAPD more than one year prior to the filing of a complaint against the officer. The parties agree that, as to three of the counts, the alleged misconduct was discovered by an uninvolved supervisor on March 10, 2005, and that a complaint was not filed by the Department with the Police Commission until March 23, 2006.

"Respondent City relies upon section 1070(c) (1) of the Charter, that provides: 'If the act, omission, or allegation of misconduct is also the subject of a criminal investigation . . . the time during which the criminal investigation . . . is pending shall toll the one-year time period.'

"*An independent examination of the administrative record shows that the weight of the evidence produced at the administrative hearing is to the effect that the LAPD did conduct an investigation to determine whether the conduct of petitioner would amount to the commission of a felony or misdemeanor, commencing on March 10, 2005, and that said criminal investigation continued until August 23, 2005.* The administrative record contains no contrary evidence. The discipline imposed upon petitioner is therefore not untimely under section 1070 (c)(1) of the Los Angeles City Charter." (Italics added.)

Lucio filed a timely notice of appeal from the judgment denying his petition for writ of administrative mandate.

## CONTENTIONS

Lucio contends counts one, two and three, relating to Jenna K., are barred by the one-year limitations provision of Charter section 1070(c).[4]

## DISCUSSION

1. *The City's action satisfied the limitations provision of Charter section 1070(c); the matter was tolled during the criminal investigation into Lucio's misconduct.*

   a. *Tolling applies irrespective of whether criminal investigation is conducted internally or by an external agency.*

Charter section 1070(c) provides no officer "shall be removed . . . for any conduct that was discovered by an uninvolved supervisor of the department more than one year prior to the filing of the complaint" with the Police Commission. (§ 1070, subds. (c), (d).)

Charter section 1070(c)(1) tolls the limitations period "[i]f the act, omission, or allegation of misconduct is also the subject of a criminal investigation or criminal prosecution . . . ."

It is undisputed the discovery date with respect to Lucio's conduct toward Jenna K. was March 10, 2005, when Jenna K. contacted Internal Affairs. One year and 13 days later, on March 23, 2006, the Department filed the initial personnel complaint against Lucio with the Police Commission. Thus, the one-year limitations provision of Charter section 1070(c) is satisfied if the matter were tolled for at least 13 days.

---

[4] Lucio's opening brief on appeal also contended the punitive action against him was barred by the limitations provision of Government Code section 3304, subdivision (d), within the Public Safety Officers Procedural Bill of Rights Act. (Gov. Code, § 3300 et seq.) However, after Lucio filed his opening brief, the California Supreme Court issued its decision in *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313 [74 Cal.Rptr.3d 891, 180 P.3d 935] (*Mays*), clarifying the law in this regard. *Mays* held that Government Code section 3304, subdivision (d), which provides no punitive action may be imposed upon a public safety officer for alleged misconduct unless the public agency investigating the allegations completes its investigation and notifies the public safety officer of its proposed disciplinary action within one year of discovering the alleged misconduct, does not require notice of the specific proposed punishment. (*Mays v. City of Los Angeles, supra*, 43 Cal.4th 313, 317–318, 325, disapproving *Sanchez v. City of Los Angeles* (2006) 140 Cal.App.4th 1069 [45 Cal.Rptr.3d 188].)

In light of *Mays*, Lucio, in his reply brief, withdrew his argument with respect to Government Code section 3304, subdivision (d). Therefore, this appeal relates solely to the application of the limitations provision of Charter section 1070(c) to counts one, two and three, pertaining to Jenna K. Count six, the later charge relating to Debra H., is not at issue in this appeal.

In this regard, the trial court found "*An independent examination of the administrative record shows that the weight of the evidence produced at the administrative hearing is to the effect that the LAPD did conduct an investigation to determine whether the conduct of petitioner would amount to the commission of a felony or misdemeanor, commencing on March 10, 2005, and that said criminal investigation continued until August 23, 2005.* The administrative record contains no contrary evidence. The discipline imposed upon petitioner is therefore not untimely under section 1070(c)(1) of the Los Angeles City Charter." (Italics added.)

Lucio does not dispute this chronology. He acknowledges an internal investigation was ongoing until August 23, 2005. Lucio's theory is that tolling applies solely in cases in which the criminal investigation is conducted by an *external* agency over which the employing agency has no control, such as outside law enforcement agencies, prosecutors or a grand jury, but there is no tolling for an *internal* criminal investigation.

This fine distinction posited by Lucio is not supported by the plain language of Charter section 1070(c)(1), which tolls the limitations period "[i]f the act, omission, or allegation of misconduct is also the subject of a criminal investigation or criminal prosecution . . . ."

Further, as the City point outs, if the people of the City of Los Angeles had intended to limit tolling only to criminal investigations conducted by outside agencies, they would have so specified.

■ In addition, there is no reason to believe investigations by outside agencies are more prone to unreasonable delays than investigations by employer agencies. The purpose of the one-year provision in Charter section 1070(c) to place a time limitation on investigations of officer misconduct (see *Mays, supra,* 43 Cal.4th at p. 321 [discussing purpose of one-year limitation in Gov. Code, § 3304, subd. (d)]), but that time is tolled while a criminal investigation is conducted into possible wrongdoing. (Charter, § 1070(c)(1).) The tolling provision recognizes that investigation of a case for possible criminal prosecution, in which guilt must be established by proof beyond a reasonable doubt, normally would be more time-consuming than an ordinary investigation into noncriminal misconduct. The criminal investigation should not have to bear the pressure of being rushed to completion because of the one-year deadline for disciplinary investigations, irrespective of the identity of the investigation agency.

■ For these reasons, we reject Lucio's attempt to limit the tolling provision of Charter section 1070(c) to criminal investigations conducted by external agencies. The months-long internal criminal investigation of Lucio

by Internal Affairs tolled the one-year period for initiating disciplinary action. Substantial evidence supports the trial court's determination that this matter was tolled for far more than 13 days, while the Department investigated possible criminal wrongdoing by Lucio. Accordingly, the Department's disciplinary action against Lucio was timely. (§ 1070(c).)

> b. *The tolling provision of Charter section 1070(c)(1) applies to counts one and three; even though those counts did not allege criminal wrongdoing by Lucio, the criminal investigation related to the relationship between Lucio and Jenna K. and included the same acts and allegations which were in issue in the administrative disciplinary proceeding.*

In the alternative, Lucio contends while the limitations period may have been tolled as to count two, there was no tolling as to counts one and three.

As noted, count one alleged that on or about June 1, 2004, Lucio, while on duty, inappropriately converted an official on-duty contact with Jenna K. into a social relationship. Count two charged that between February 1, 2005, and February 28, 2005, Lucio "inappropriately threatened" Jenna K.[5] Count three alleged that on numerous occasions between June 1, 2004, and February 15, 2005, Lucio, while on duty, conducted personal business.

Unlike count two, relating to Lucio's threats against Jenna K., counts one and three, relating to a social relationship with Jenna K. and conducting personal business while on duty, did not allege criminal wrongdoing by Lucio. Therefore, a question arises as to the applicability of the tolling provision of Charter section 1070(c)(1) to counts one and three.

Charter section 1070(c)(1) provides: *"If the act, omission, or allegation of misconduct is also the subject of a criminal investigation* or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period." (Italics added.) Here, the acts and the allegations of misconduct which were alleged in counts one and three were also the subject of the criminal investigation.

Specifically, Sergeant Donatoni testified before the Board that he learned in his interview with Jenna K., conducted as part of the criminal complaint investigation, about the circumstances surrounding Lucio's conversion of an on-duty contact with Jenna K. into a social relationship (count one), how the relationship developed and then deteriorated, to the point where, according to Jenna K., Lucio threatened her life.

---

[5] Count two ultimately was amended to allege that between February 1, 2005, and February 28, 2005, Lucio, while off duty, made "improper remarks" to Jenna K.

Further, with respect to count three (conducting personal business while on duty), Sergeant Donatoni testified that when he interviewed Jenna K., she indicated Lucio went to her residence while on duty on at least four occasions.

Thus, the acts and the allegations of misconduct which were alleged in counts one and three were also the subject of the criminal investigation. Therefore, the tolling provision of Charter section 1070(c)(1) applies with equal force to counts one and three.[6]

Our conclusion herein with respect to Charter section 1070(c) is consistent with *Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977 [50 Cal.Rptr.3d 822] (*Parra*), which addressed the tolling provision of Government Code section 3304, subdivision (d)(1). *Parra* explained: "Section 3304, subdivision (d)(1) applies '*[i]f the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution . . . .*' Contrary to Lieutenant Parra's argument, it is the 'act, omission, or other allegation' which must be the subject of the prosecution, and any objective reading of the record reflects that the criminal investigation encompassed the misconduct of all officers who were involved in connection with the incident—including Lieutenant Parra. In the words of the [Police] Commission: '*the criminal investigation included all of the conduct, indeed the very allegations at issue in these administrative proceedings.*' We conclude [the lower court] correctly concluded that the [one-year] limitation period was tolled by the criminal investigation . . . ." (*Parra, supra,* 144 Cal.App.4th at p. 994, italics added.) Thus, in *Parra,* noncriminal disciplinary charges, such as "discredit for making improper comments during a pending investigation" and "neglect of duty for failing to conduct a prompt and proper investigation" against the police officers who had been criminally investigated for possible misconduct, were tolled for the duration of the criminal investigation. (*Id.* at pp. 987, 994; see also *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1071, 1078–1079 [55 Cal.Rptr.3d 14].)

For these reasons, we reject Lucio's contention that counts one and three were not tolled by Charter section 1070(c).

2. *Remaining issues not reached.*

Because the City's disciplinary action against Lucio satisfied the limitations period of Charter section 1070(c), it is unnecessary to address the City's

---

[6] If our interpretation of Charter section 1070(c) is not what was intended, the provision could use clarification. (*International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304, fn. 6 [81 Cal.Rptr.2d 456].)

argument that Charter section 1070(c) is preempted by Government Code section 3304, subdivision (d), or any other issues.

## DISPOSITION

The judgment is affirmed. The parties shall bear their respective costs on appeal.

Croskey, J., and Kitching, J., concurred.