Filed 10/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EDGAR BACILIO, | B279217 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS156216) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mary H. Strobel, Judge. Affirmed.

Rains Lucia Stern St. Phalle & Silver, Jacob A. Kalinski, Christopher D. Nissen, and Gidian R. Mellk for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Blithe S. Bock, Assistant City Attorney, and Shaun Dabby Jacobs, Deputy City Attorney, for Defendants and Respondents.

\* \* \* \* \* \*

The Public Safety Officers Procedural Bill of Rights Act (POBRA), Government Code section 3300 et seq.,[1] requires public agencies investigating misconduct by a public safety officer to complete their investigation and notify the officer of any proposed discipline within one year of discovering the misconduct. (§ 3304, subd. (d)(1).) If the possible misconduct "is also the subject of a criminal investigation or criminal prosecution," the one-year period is tolled while the "criminal investigation or criminal prosecution is pending." (§ 3304, subd. (d)(2)(A).) This appeal presents the question: When is a criminal investigation no longer "pending"? In other words, when does this tolling period end for a criminal investigation? We hold that a criminal investigation is no longer pending—and section 3304, subdivision (d)(2)(A)'s tolling period ends—when a final determination is made not to prosecute all of the public safety officers implicated in the misconduct at issue. Applying this definition, we conclude that the tolling period did not end until the Los Angeles County District Attorney officially rejected prosecution of all three officers investigated in this case. Consequently, the investigation and discipline in this case was timely. We accordingly affirm.

**FACTS AND PROCEDURAL BACKGROUND**

I.      **Facts**

A.      *Underlying incident*

Plaintiff Edgar Bacilio (Bacilio) is a police officer with the Los Angeles Police Department (LAPD). On March 30, 2011, Bacilio was on patrol with his partner, Nestor Escobar (Escobar). Early in their shift, the officers responded to a family dispute call, arrested the husband, and placed the child with the wife.

---

[1]      All further statutory references are to the Government Code unless otherwise indicated.

Later in their shift, they drove to the wife's apartment to conduct a welfare check on the child.

Bacilio was the officer in charge of accurately documenting the officers' activities during their shift. In the Daily Field Activities Report (or DFAR, for short), Bacilio reported that he and Escobar had spent 115 minutes at the wife's apartment. However, the Incident Recall Sheet and Unit History Log, which also track officers' activities during their shifts, reflected that the two officers had been at the apartment for 12 minutes and 86 minutes, respectively.

### B.    *Report of misconduct*

On August 4, 2011, the wife filed a report alleging that Escobar had spent 90 minutes in her apartment and, while there, had kissed her, touched her breasts and vaginal area over her clothes, and propositioned her for sex. The wife later picked Escobar out of a photo spread, indicating that she was 60 to 70 percent sure he was the one who sexually assaulted her.

### C.    *Internal affairs investigation*

The LAPD's Internal Affairs Division immediately began to investigate the wife's claim of misconduct as to Escobar, Bacilio, and a third officer. Because the alleged misconduct could constitute a crime as to both Escobar (namely, sexual battery) and Bacilio (namely, aiding and abetting sexual battery), the investigation was both administrative and criminal.

3

**D.** *Presentation to, and rejection by, the District Attorney's Office*

On June 3, 2013, the lead internal affairs investigator presented the results of the LAPD's Internal Affairs investigation to the Los Angeles County District Attorney's Office. The lead investigator sought prosecution of Escobar for felony sexual battery under color of authority.

On August 6, 2013, a deputy district attorney interviewed the wife, using the lead internal affairs investigator as a translator.

Immediately after the interview, the deputy district attorney made statements to the lead internal affairs investigator regarding future prosecution. According to the investigator's written notes from their post-interview discussion, the prosecutor said "she was not going to file against the officers" and that "it was okay . . . to do the admin[istrative] interviews" of Bacilio and the third LAPD officer "since she is not filing charges against them." In his later testimony about the post-interview discussion, the investigator stated that the prosecutor had not "officially rejected" the case for prosecution; that she had said "she most likely was not going to file . . . against the officers" but "was still actually working on the case"; and that it was okay to interview Bacilio and the third LAPD officer because *they* "were not" "criminally involved," such that interviewing them "would not interfere with [the prosecutor's] case."

On October 3, 2013, the district attorney's office sent Internal Affairs a Charge Evaluation Worksheet officially declining to file charges against Escobar, Bacilio, and the third LAPD officer. The Worksheet was signed by the prosecutor as well as a "reviewing deputy." The Worksheet explained that there was insufficient evidence to prove either felony or

4

misdemeanor sexual battery, and that the statute of limitations on any misdemeanor charge had expired.

### E.   *Administrative discipline*

On September 10, 2014, the LAPD served Bacilio with notice that Internal Affairs was seeking an official reprimand against him based on the underlying incident.[2]

A few months later, in November 2014, the LAPD brought 11 administrative charges against Escobar, Bacilio, and the third LAPD officer.  The LAPD alleged two counts of misconduct against Bacilio:  (1) "fail[ing] to maintain an accurate daily field activities report (DFAR)" during his March 30, 2011 shift, and (2) making "misleading statements" during his two interviews with Internal Affairs on September 27, 2013, and February 17, 2014.

The LAPD sustained the first charge against Bacilio but found the second charge "Not Resolved."

Bacilio appealed the LAPD's ruling to a hearing officer. Following an evidentiary hearing at which Bacilio and the lead internal affairs investigator both testified, the hearing officer issued a written ruling.  The hearing officer found that the LAPD had initiated administrative disciplinary proceedings against Bacilio in a timely manner because POBRA's one-year limitations period was tolled from the time of the wife's initial report of

---

[2]     Bacilio was served with a so-called "*Skelly* notice."  Based on evidence that a *Skelly* notice is sufficient to satisfy POBRA for penalties up to (but not exceeding) an official reprimand, the hearing officer concluded that the *Skelly* notice functioned as the "Letter of Intent or Notice of Adverse Action" required by section 3304, subdivision (d)(1).  Because the parties do not challenge this ruling on appeal, we also accept that Bacilio received POBRA-approved notice on September 10, 2014.

potentially criminal misconduct "until [Bacilio's] criminal case was officially rejected by the D.A. on October 3, 2013." On the merits, the hearing officer sustained the first charge, but changed the "Not Resolved" finding on the second charge to "Unfounded."

The LAPD's then-Chief of Police, Charles Beck (Chief Beck), agreed with the hearing officer's resolution of the first charge, but changed the second charge back to "Not Resolved."

## II. Procedural Background

Bacilio filed a petition for a writ of administrative mandamus against defendants the City of Los Angeles (the City) and Chief Beck[3] seeking (1) declaratory and injunctive relief vacating all adverse disciplinary findings, and (2) a $25,000 penalty for the LAPD's malicious violation of POBRA.

Following full briefing and a hearing, the trial court issued a 23-page minute order denying the petition in part and granting it in part. The court ruled that the LAPD's administrative proceedings against Bacilio were timely under POBRA. Specifically, the court ruled that the "statutory tolling period" for criminal investigations did not end until "the DA . . . formally close[d] its criminal file" on October 3, 2013. The court noted "[t]here are good policy reasons" to continue tolling until "a formal notice from the DA" declining prosecution—chiefly, that "informal discussions could be misinterpreted." On the merits, the court found that the "weight of the evidence" (1) supported

---

[3]     While this appeal was pending, Michel Moore succeeded Chief Beck as LAPD's Chief of Police. Because Chief Beck was named as a defendant in this case in his official capacity, Chief Moore is now substituted as a defendant in this appeal (see *Weadon v. Shahen* (1942) 50 Cal.App.2d 254, 259-260); but our opinion continues to refer to Chief Beck when discussing his actions while he was still Chief.

6

Chief Beck's finding as to the first charge for failing to maintain an accurate DFAR, but (2) did not support his finding that the second charge for making misstatements during interviews was "Not Resolved." At the request of the parties, the court simply amended the finding on the second charge to "Unfounded" rather than remanding for further proceedings.

After judgment was entered, Bacilio filed a timely notice of appeal.

## **DISCUSSION**

Bacilio argues that the trial court erred in denying his petition for a writ of administrative mandamus as to *all* disciplinary charges because the LAPD did not notify him of the potential discipline within POBRA's one-year limitations period. More specifically, Bacilio contends the tolling period under the exception for criminal investigations ended when the prosecutor orally told the internal affairs investigator that "she was not going to file against the officers" rather than when the district attorney's office formally rejected prosecution a few months later.

The issue Bacilio presents in this appeal entails two subsidiary questions: (1) What is the standard for determining when the tolling period for criminal investigations ends under section 3304, subdivision (d)(2)(A); and (2) did the trial court properly determine that the standard was not satisfied in this case until the formal rejection of prosecution? The first question is a question of statutory interpretation subject to our independent review. (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2016) 247 Cal.App.4th 700, 707 (*Department of Corrections*).) In answering the second question, we review the court's findings for substantial evidence because the trial court has already exercised its independent judgment

7

upon the evidence in recognition of the public employee's fundamental vested right in his employment. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 902 (*Jackson*).) Our task here is to review the trial court's ruling, not its reasoning. (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.)

## I. When Does Tolling End for Criminal Investigations Under Section 3304, Subdivision (d)(2)(A)?

POBRA is designed to "maintain[] stable employer-employee relations between public safety employees and their employers" (*Jackson, supra,* 111 Cal.App.4th at p. 909), which is important because "'[e]ffective law enforcement depends'" upon such stability (*Richardson v. City and County of San Francisco Police Com.* (2013) 214 Cal.App.4th 671, 691 (*Richardson*)). (See generally § 3301.) POBRA achieves this goal by codifying "a list of basic rights and protections which must be afforded all peace officers . . . by the public entities that employ them." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135.)

Among the basic rights POBRA confers is the right to a speedy investigation. POBRA secures this right by requiring a public agency, within one year, to (1) complete its investigation of any "act, omission, or other allegation of misconduct" by a public safety officer, and (2) notify the affected officer of the agency's "proposed discipline." (§ 3304, subd. (d)(1);[4] *Squire v. County of*

---

[4] In pertinent part, the provision provides: "[N]o punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete

8

*Los Angeles* (2018) 22 Cal.App.5th 16, 23.) The "one-year limitation period" begins to tick once a "person authorized to initiate an investigation" "discovers, or through the use of reasonable diligence should have discovered" the act, omission, or other allegation of misconduct. (§ 3304, subd. (d)(1); *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 106.) This one-year limitations period "ensure[s] that an officer will not be faced with the uncertainty of a lingering investigation" (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 322, superseded on other grounds by § 3304, subd. (d)) and, on a more practical level, "promotes the . . . officer's interest in receiving fair treatment by requiring the diligent prosecution of known claims so that police officers receive prompt notice of claims against them, can prepare a fair defense on the merits, and can marshal the facts while memories and evidence are fresh" (*Jackson, supra*, 111 Cal.App.4th at p. 909).

POBRA specifies a number of situations in which this one-year limitations period is inapplicable, is tolled, or is extended. (§ 3304, subd. (d)(2)(A)-(H).) At issue here is the following exception: "If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period." (*Id.*, subd. (d)(2)(A).) This exception makes tolling mandatory for the "entire duration" of the pending criminal

_____

its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period." (§ 3304, subd. (d)(1).)

investigation or prosecution. (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 958-959 (*Daugherty*); *Department of Corrections*, *supra*, 247 Cal.App.4th at p. 715; *Lucio v. City of Los Angeles* (2008) 169 Cal.App.4th 793, 802 (*Lucio*).) Because the exception focuses on whether "the act, omission, or other allegation of misconduct" is "the subject" of investigation or prosecution, tolling continues even as to officers who are cleared of any misconduct as long as the act, omission, or other allegation is still being investigated or prosecuted as to *some* officer. (*Parra v. City and County of San Francisco* (2006) 144 Cal.App.4th 977, 994.) The reason for this tolling exception is straightforward: Criminal investigations are more nuanced, more complex, and more time consuming, and should not be placed on the same "fast track" as purely administrative investigations. (*Daugherty*, at pp. 958-959; *Lucio*, at p. 800.)

So at what point is a criminal investigation no longer "pending" within the meaning of section 3304, subdivision (d)(2)(A)?

As with any question turning on statutory interpretation, we start with the text of the statute. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) Where, as here, the text of the statute does not speak to the question, we turn next to "'other aids, such as the statute's purpose, legislative history, and public policy.'" (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1184, quoting *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

These aids all point to one conclusion in this case: A criminal investigation is no longer pending when a final determination not to prosecute and to close the criminal

10

investigation is made.  Interim decisions short of a final determination will not stop the tolling.

We reach this conclusion for three reasons.

First, tying the conclusion of tolling to the final determination not to prosecute best harmonizes POBRA's underlying purposes.  The tolling exception for criminal investigations seeks to balance two competing interests:  The public safety officer's POBRA-based right to a speedy investigation and adjudication (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1075 (*Breslin*)), and the public agency's or prosecuting entity's right to conduct a fulsome criminal investigation on an efficient, but not unduly cramped, timetable.  Requiring that the determination not to prosecute be final, rather than interim, ensures that investigations are not prematurely placed back on POBRA's fast track while at the same time ensuring that an officer's right to speedy adjudication becomes paramount once a final determination is made.

Second, tying the conclusion of tolling to the final determination provides the most workable standard, particularly in light of the alternatives.  (Accord, *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 ["we may reasonably infer that [our Legislature] intended an interpretation producing practical and workable results"].)  Treating an interim decision not to prosecute as definite ignores the practical realities of criminal investigations.  Such investigations rarely involve a steady and continuous acquisition of information, and instead proceed by way of fits and starts as lines of inquiry stagnate, only to come alive again as new information is uncovered.  (See *Daugherty*, *supra*, 24 Cal.App.5th at p. 963 [noting "the ebb and flow of activity in a criminal case"].)  Decisions short of a final

11

determination are necessarily in flux; they should not be given determinative effect. For similar reasons, we reject a standard that would peg the end of tolling to whether the criminal investigation was "active." We agree with *Richardson, supra*, 214 Cal.App.4th at pages 697-698 that such a standard "'would simply be unworkable' "because it leaves unanswered the central question of how much an investigator must do, and how frequently, to maintain an "active" investigation.'" Conversely, a standard that insists upon a *formal* notification that a criminal investigation has terminated goes too far in the other direction because it may invite mischief and delay by empowering an agency that has made a final determination to manipulate POBRA's timetable by holding off issuing formal notification of that determination.

Lastly, tying the conclusion of tolling to the final determination whether to prosecute best harmonizes the cases that have thus far construed section 3304, subdivision (d)(2)(A)'s exception. Many cases have ruled that tolling ends when the prosecuting entity or the public agency itself has formally ended its criminal investigation. (*Daugherty, supra*, 24 Cal.App.5th at p. 962 ["formal end to the corruption investigation"]; *Breslin, supra*, 146 Cal.App.4th at pp. 1078-1079 ["when the criminal investigation formally ended"]; *Richardson, supra*, 214 Cal.App.4th at p. 697 ["'when the criminal investigation formally ended'"].) Others have held that a log entry in the public agency's records that "there was 'lack of criminal prima facie to present' to a prosecutor" ends the tolling. (See *Lucio, supra*, 169 Cal.App.4th at pp. 796-797 [applying City Charter provision with same language as section 3304, subdivision (d)(2)(A)].) In each of

12

these cases, the formal end or log entry denoted a final determination that the criminal investigation was completed.

Bacilio offers two further arguments in response. First, he asserts that the text of section 3304, subdivision (d)(2)(A) nowhere says that an "informal letter" is not enough. This is true, but irrelevant because the text does not speak *at all* to the issue of when tolling ends. Second, he levels several attacks on a standard that hinges the end of tolling to a formal rejection— namely, that it might drag out investigations, lead to game playing, and be meaningless in cases where the public agency does not present its case to an outside prosecutorial entity. Because our construction of section 3304, subdivision (d)(2)(A) makes formal rejection a sufficient but not a necessary condition to the end of tolling, Bacilio's attacks on a standard we do not adopt are beside the point. What is more, his attacks do not call into question the propriety of the standard we *do* adopt, for the reasons we explain above.

## II. Does Substantial Evidence Support the Finding That the District Attorney's Office Did Not Finally Determine Not to Prosecute Until Its October 3, 2013 Declination to Prosecute?

In assessing whether a prosecuting entity's or public agency's determination is final, we look to the totality of the circumstances along the entire timeline of the decision maker's involvement. (*Richardson*, *supra*, 214 Cal.App.4th at pp. 693-694 [looking to what happened after interim decisions not to prosecute].) Although POBRA itself does not specify which party bears the burden of proving the applicability of tolling (*id.* at p. 698), the general rule is that the party who invokes a tolling doctrine bears the burden of proving its applicability (*Brown v.*

13

*Bleiberg* (1982) 32 Cal.3d 426, 439). We will apply that generally applicable rule.

Substantial evidence supports the finding that the City carried its burden of showing that the district attorney's office did not make its final determination regarding prosecution until it issued its October 3, 2013 Worksheet declining to prosecute. To begin, the lead internal affairs investigator testified that the deputy district attorney's comments to him on August 6, 2013 were tentative because she was "*most likely* . . . not going to file" charges and was "still actually working on the case." Further, the very fact that the district attorney's office prepared and transmitted a more fulsome and complete Worksheet regarding all three officers under investigation supports the finding that the earlier, August 6, 2013 oral advisement was an interim decision rather than a final determination. What is more, that the Worksheet was signed not only by the prosecutor but *also* by a reviewing deputy suggests that further review was necessary and that the prosecutor's earlier oral advisement was not definitive. In these regards, the facts of this case are much like the facts of *Richardson, supra,* 214 Cal.App.4th 671, where the court determined that a criminal investigation was still pending (and thus still tolled under POBRA) until the prosecuting entity wrote a formal memo declining charges, even though earlier memos to the file indicated that no investigation was ongoing. (*Id.* at pp. 693-694.)

Bacilio argues that the deputy district attorney's August 6, 2013 comments heralded the end of the criminal investigation. Specifically, he points to the internal affairs investigator's written notes recounting that the prosecutor said "she was not going to file against the officers" and that "it was okay . . . to do

14

the admin[istrative] interview" as well as his initial testimony at the hearing that her comments constituted "an official rejection." Bacilio is essentially asking us to place greater weight on one part of the internal affairs investigator's testimony over another, and to do so in part by looking to *who* was asking the investigator the questions. But the hearing officer (and then the trial court) already did that, and each independently found the investigator's comments regarding the tentative nature of the prosecutor's comments to be more accurate. As a general principle, we cannot gainsay their determination as to which portions of a witness's testimony to credit. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) And we are particularly loathe to do so in this context, where doing so is tantamount to giving greater weight to what the investigator thought the prosecutor meant than to the prosecutor's actual (though subsequent) words. (Accord, *Richardson*, *supra*, 214 Cal.App.4th at p. 695 ["'It defies reason to believe that a member of a separate department . . . is better able to ascertain the conclusion of an investigation within that separate department'"].)

**DISPOSITION**

The judgment is affirmed. The City and the LAPD Chief of Police are entitled to their costs on appeal.

**<u>CERTIFIED FOR PUBLICATION.</u>**

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

15